[Crim. No. 4306. First Dist., Div. One. Nov. 8, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOSEPH DESIRE BELENGER, Defendant and Appellant.

160

Neal L. Petersen, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and Barry L. Bunshoft, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, P. J.—Defendant appeals from his conviction of violation of section 459 (burglary) after trial by the court.

QUESTIONS PRESENTED.

1. Sufficiency of evidence.
2. Court's statement concerning distance.

EVIDENCE.

The case involves the taking of certain personal property from the home of one Usher by Walter Burton,

while defendant waited outside. Both Burton and defendant testified. The conflicts in their testimony are minor. On October 21, 1962, defendant, his wife and Burton shared a room at the Redwood Trail Motel in Felton, which defendant had rented under the name of J. Hicks. Defendant had known Burton for about four months. The three persons were traveling together in defendant's car, registered in defendant's wife's name. That evening in defendant's car Burton drove to the Harbor Inn, where Usher sat drinking at the bar. Burton and Usher were strangers to each other but a bar room acquaintanceship started up. Both men drank considerably. On Usher's invitation to continue their conversation at his home, the two men left the inn between 11 and 12 p.m. Usher was "feeling good." Burton drove defendant's car back to the motel. He entered the motel room to leave a dog which had accompanied him to the inn. Defendant and wife were asleep, but defendant was awakened to open the door. After two to five minutes there, Burton entered Usher's car, in which Usher had followed Burton to the motel, and the two drove to Usher's house. There Usher fell asleep. Burton then took $10 from Usher's wallet, and in Usher's car drove to the inn where he purchased some liquor and returned to the motel. There he reawakened defendant. Defendant testified that they consumed some beer and whiskey and that Defendant became intoxicated. Burton told him that Burton had taken some money from Usher's house, and defendant told Burton to return Usher's car or he would be guilty of car theft. Burton requested defendant to follow him in the latter's car to Usher's house. They then proceeded in the two cars to Usher's house. Defendant parked his car behind the Usher car. Burton entered the house. Defendant remained in his car. In 10 or 15 minutes Burton emerged from the house bearing an armload of clothes. These he placed in the back seat of defendant's car and then returned to the house. Burton had left the car's rear door open when he first left the car. Defendant admitted that he knew Burton was stealing the clothes. When Burton remained in the house 10 or 15 minutes, defendant "wanted to get out of there. There were cars coming by ..." Defendant then went up on the porch and through the window saw that Usher was asleep. He returned to the car to await Burton. With Usher still asleep, Burton cleaned out Usher's wallet, taking $95 therefrom. He also took some $200 from a deposit bag in a dresser drawer, and a television set which he placed in defendant's car. De-

fendant admitted that he surmised that Burton had stolen the television set. After Burton placed the television set in the car, the two men returned to the motel in defendant's car, Burton driving, defendant sitting alongside him in the front seat. Both witnesses agree that defendant did not carry any of the stolen property nor assist in putting it in the car. On returning to the motel, the men agreed that, as Usher might come looking for Burton, they had better leave; so, about an hour later, the two men and Mrs. Belenger left the motel and went to Burton's grandmother's home in Watsonville. During the trip, Burton gave defendant $50 of the stolen money. Defendant testified that he didn't know if this money came from the robbery or from money Burton had before that. An inference could reasonably be drawn from the fact that defendant knew of the robbery that he also knew that the $50 came from that stolen from Usher, and, in any event, was for the use of defendant's car in the burglary. Burton had given defendant money on other occasions.

On October 31, Sergeant Marston of the Santa Cruz Sheriff's Department stopped defendant and asked his name. Defendant replied that he was Joseph Autry and produced a Department of Employment card made out to a Joseph Autry. When asked if his real name was Belenger, he denied it and began to shake nervously. On the way to the sheriff's office defendant admitted that he was Belenger. At the Van Ness Apartments where Belenger was currently registered as J. Hicks (Burton was living there with defendant) the sergeant, accompanied by defendant, discovered certain property which was later identified as property taken from Usher's house while he was asleep on the night in question. The stolen television set was found at Burton's grandmother's house. Defendant's explanation of the use of an alias is that he was then a fugitive from justice from Arizona.

1. EVIDENCE SUFFICIENT.

Although the evidence does not show that defendant either instigated or advised the commission of the burglary, it clearly shows that he aided and abetted in its commission.

"Every person who enters any house, room ... with intent to commit grand or petit larceny or any felony is guilty of burglary." (Pen. Code, § 459.)

"All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, *or aid and abet in its commission*, or, not being present, have advised and en-

couraged its commission ... are principals in any crime so committed.'' (Pen. Code, § 31; italics added.)

■ To ''aid'' means to supplement the efforts of another or to assist in his acts regardless of any knowledge that the aid is rendered in support of a criminal act. (*People* v. *Etie* (1953) 119 Cal.App.2d 23 [258 P.2d 1069]; *People* v. *Dole* (1898) 122 Cal. 486 [55 P. 581, 68 Am.St.Rep. 50].) To ''abet,'' on the other hand, requires knowledge of the wrongful purpose of the perpetrator and actual participation in the act constituting the offense. (*People* v. *Malotte* (1956) 46 Cal.2d 59 [292 P.2d 517].) To ''aid *and* abet,'' therefore, means ''to instigate, encourage, promote or aid with guilty knowledge of the wrongful purpose of the perpetrator.'' (*People* v. *Goldstein* (1956) 146 Cal.App.2d 268, 273 [303 P.2d 892].) ■ The logical basis for conviction as an aider and abettor is that with knowledge of the unlawfulness of the act, one renders some independent contribution to the commission of the crime or otherwise makes it more probable that the crime will be successfully completed than would be the case absent such participation. (Perkins, Criminal Law, p. 574.)

■ It is apparent from the recent cases that encouraging the perpetrator to commit the crime need not require active physical or verbal assistance in any particular act so long as the act performed by the aider and abettor was in furtherance of the crime and done with knowledge of the wrongfulness of the perpetrator's acts. In *People* v. *Carlson* (1960) 177 Cal.App.2d 201, [2 Cal.Rptr. 117], the court, quoting from *People* v. *Le Grant* (1946) 76 Cal.App.2d 148, 153 [172 P.2d 554], notes at page 205: ''One may aid and abet without having previously entered into a conspiracy to commit a crime. [Citations.] While mere presence alone of the accused at the scene of the homicide is not sufficient to make him a participant, nor is he necessarily guilty because he does not prevent it, his presence is a circumstance tending to support a finding that he is a principal. . . . It need not be shown, however, that such direct perpetrator communicated his purpose to the accused in order to make him liable as an aider and abettor, for he would be liable as such if he were present, and knew the intention of the other, and either by acts, words or gestures, aided or encouraged the commission of the crime.'' (See also *People* v. *Villa* (1957) 156 Cal.App.2d 128, 133 [318 P.2d 828].)

In *Carlson,* the defendant entered a liquor store with two

other men. The other two men committed the acts of robbery upon the proprietor while the defendant remained in the store with them, leaving during the robbery, returned to the waiting car and, according to his testimony lay down in the back of the car. The court nevertheless held that the defendant's conviction should be affirmed. The circumstances were sufficient to warrant the jury in finding that the defendant had knowledge of the felonious acts both before and during their commission and that he was a participant therein. In *People* v. *Grischott* (1951) 107 Cal.App.2d 631 [237 P.2d 712], the court held that one is charged with knowledge of the wrongfulness of the act of the perpetrator, whether or not the actor communicated it to him, where the circumstances disclosed such purpose.

It is clear from the record that defendant knew that Burton was stealing the clothes when he saw Burton emerge from Usher's house with them in his arms. Defendant knew that Burton had stolen money from Usher on his first visit to the house. It is equally clear that defendant was aware that Burton was stealing the television set. Therefore, the element of guilty knowledge of the wrongful purpose of the perpetrator's acts is satisfied. Defendant contends, however, that he did no act sufficient to amount to "aiding or abetting" within the meaning of the section, and relies heavily on *People* v. *Hill* (1946) 77 Cal.App.2d 287 [175 P.2d 45].

In *Hill*, the appellant met the perpetrators of the robbery for the first time a short time before the robbery took place. They induced him to drive around for a while to look for girls. They then asked him to park on a side street for a few minutes and await their return. He sat in the car, turned off the lights and went to sleep. The others committed the robbery. Before the robbery took place the defendant had no knowledge of the criminal purpose of the perpetrators, nor did he see the gun which one of them possessed. He did not receive any of the fruits of the crime, nor was he promised any. The court held that in driving the car away from the scene of the crime there was not sufficient participation without knowledge of the unlawful acts of his associates to render the appellant guilty as an aider and abettor. As pointed out in *People* v. *Carlson, supra,* 177 Cal.App.2d 201, 206, in *Hill* there was no evidence upon which to base an inference that the defendant had any knowledge of the felonious purpose entertained by his codefendants or that he knew anything of the robbery. In *People* v. *Mansour* (1951) 103 Cal.App.2d

592 [230 P.2d 52], the appellant drove the perpetrator of the robbery to the scene of the crime in her own car and waited for him in the car. There the court held that even if the driver did not know of the intent of the perpetrator until after the act of robbery had been completed (which the court there doubts and which the jury found to be otherwise), her acts subsequent to learning of the crime which gave aid to the perpetrator were sufficient to render her an aider and abettor.

Defendant makes much of the fact that he did not drive the car away from the scene of the crime and therefore, it is argued, he did not do any act in furtherance of the crime. He disregards the fact that knowing of the burglary he permitted his car to be used for the transportation of the stolen property and for getting away from the scene of the crime.

In *People* v. *Eskew* (1961) 206 Cal.App.2d 205, 207 [23 Cal.Rptr. 466], the court noted, quoting from *People* v. *Moore* (1953) 120 Cal.App.2d 303, 306 [260 P.2d 1011]: " ' "The presence of one at the commission of a felony by another is evidence to be considered in determining whether or not he was guilty of aiding and abetting; and it has also been held that presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." [Citations.] "Where two or more persons enter upon a common undertaking, whether by prearrangement, or entered into on the spur of the moment, and that undertaking contemplates the commission of a criminal offense, each of the parties to the undertaking is equally guilty of the offense committed *whether he did an overt act or not.*" …' " (Italics added.) In that case, the defendant remained outside the laundry while his friend burglarized it and seemed clearly to have been in the position of a lookout. In *Moore, supra,* the defendant remained 4 or 5 feet away from the victim as his companions robbed the victim. He neither said nor did anything. The court nevertheless upheld his conviction for aiding and abetting, saying at page 306: "Appellant was not a mere bystander or onlooker. He may have committed no overt act during the robbery but none was required. His presence *could have* given encouragement to his companions and acted as a deterrent to any continued resistance on the part of … [the victim]. He was in the position of a lookout and though he gave no warning none was required." (Italics added.)

There is no evidence in the record in our case that defend-

ant was supposed to act as a lookout. However, by his own testimony he was aware that cars were going by that might discover Burton in the burglary act. He went to get Burton out of the house. However, he then merely stood on the porch and did not suggest that Burton leave without taking any of Usher's property. There is some evidence that he felt himself to be in the position of a lookout and a part of Burton's activities. Presumably defendant was still in possession of the keys to his own car and could have left at any time.

Defendant made the commission of the crime possible. He provided the means by which the stolen property was transported. Without the use of the automobile, it is doubtful that the clothes and the television would have been taken from the house, since it was at least a mile from the house to the motel room. The fact that defendant did not drive the car is not conclusive. He was in possession of the car and the keys when he drove it back to the house following Burton. He then must have given up possession of the car or the keys to Burton after the goods were loaded into it. Defendant permitted, without objection, his car to be used to transport the property which he knew was stolen property. He aided Burton in hiding some of the property.

There is no showing that Burton in any way threatened or exercised such superiority of force over defendant as to compel him against his will to allow his car to be used for the transportation of the stolen property. The fact that defendant may have been intoxicated does not indicate another result. He was at least capable of driving the car to the scene of the crime and thereafter of reaching the decision to leave the motel room so as to avoid detection. The degree and effect of his intoxication was a matter for the court to determine.

■ An aider and abettor is "liable for the natural and reasonable or probable consqeuences of any act that he knowingly aided or encouraged." (*People* v. *Villa, supra,* 156 Cal.App.2d 128, 134.) ■ In this case, defendant knew of the wrongfulness of Burton's acts. He must have known that the use of the automobile was necessary to completion of the crime, and surrendered possession and control of the automobile to the wrongdoer. In *People* v. *Ellhamer* (1962) 199 Cal.App.2d 777, the court noted at page 782 [18 Cal. Rptr. 905] : "Although the guilt of the aider and abettor is dependent upon the actor's crime, the criminal intent of the aider and abettor is *presumed* from his actions with knowledge of the actor's wrongful purpose." (Italics added.)

Therefore, there was sufficient evidence for the trial court to have found that defendant aided and abetted Burton in the commission of the crime.

 Defendant also contends that the distance from the car to the house is too great as a matter of law to constitute ''presence'' at the scene of the crime, and therefore, absent a finding that defendant advised or counseled the commission of the crime, he cannot be held as a principal. Presence is a question of fact. (*People* v. *Silva* (1956) 143 Cal. App.2d 162 [300 P.2d 25].) Defendant testified that he pulled his car in behind that of Usher in the driveway. Burton's testimony indicated that it was about 100 yards away from the house. Presence need not be always an actual and immediate standing by. There may be constructive presence whenever a person is cooperating with the perpetrator and is situated so as to be able to aid him in the commission of the crime. (Perkins, Criminal Law, p. 572.) At common law, an accessory before the fact was one who ''aided, counseled, commanded or encouraged the commission ... [of a felony], *without having been present* either actually or constructively at the moment of perpetration.'' (Perkins, *supra,* p. 575; italics added.) If that same person were present, he was a principal in the second degree. (Perkins, *supra,* p. 575, and cases cited.) In Penal Code section 971, the distinction between accessories before the fact and principals of the first and second degree was abolished and the offenses were merged into the one section.

2. COURT'S STATEMENT.

 During cross-examination of defendant, he was asked if he had not walked with Burton from the Usher house to ''the car which you parked about a hundred yards away?'' Defendant's counsel then stated that there was no testimony showing that distance between the car and the house. (Defendant had testified that he parked the car back of where Burton parked the Usher car in the driveway.) Then the following occurred: ''MR. LIBERTY [Assistant District Attorney]: Mr. Burton testified that he parked approximately one hundred yards away. THE COURT: It was down the hill, and whether it was one hundred yards or not, I don't know. Does it make that much difference? MR. BRITTON [Public Defender]: I think it makes a great deal of difference, down the hill or down the driveway a hundred yards. THE COURT: Let's withdraw the one hundred yard situation, Mr. Liberty. I don't see that it's material. I know

that Mr. Burton testified it was down the hill, but nothing about yards here.''

Defendant contends that the trial court rendered his finding of defendant's guilt based upon a misconception that the distance defendant parked his car away from the house was not material in determining whether defendant was an aider and abettor. There are two answers to this contention: (1) that the court could have accepted defendant's testimony as to where his car was parked rather than that of Burton; (2) as we have heretofore shown, assuming the car to have been parked some 100 yards away from the house, defendant, as his actions showed, was ''present'' at the burglary. There is no authority holding that that distance under the circumstances here (among others, that defendant testified that he could see the house from where he sat in the car, and that he went up to the porch while Burton was inside the house, burglarizing it) prevents defendant from being ''present.'' Presence depends upon the circumstances of each case and implies an area with no metes and bounds. (See *People* v. *Lavender* (1934) 137 Cal.App. 582 [31 P.2d 439].) There was no error in the court's interpretation.

The judgment is affirmed.

Sullivan, J., and Molinari, J., concurred.