[Crim. No. 583.   Fifth Dist.   Apr. 24, 1969.

THE PEOPLE, Plaintiff and Respondent, v. LARRY HALL, Defendant and Appellant.

Kenneth W. DeVaney, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Nelson P. Kempsky and Elliott D. McCarty, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant was accused of two felonies: count I charged violation of section 459 of the Penal Code (burglary), and count II the breach of Penal Code section 664 (attempted burglary). The appellant also admitted three prior felony convictions, one in Arkansas on or about the 8th day of September, 1952 (forgery); the second in Oklahoma on or about the 5th day of July, 1956 (forgery); the third in Fresno County, on or about the 23d day of July, 1963 (robbery).

The information was joint in form, charging Larry Hall in the same accusatory document as Glenn Adrian Carr; Carr was accused of the same two felonies and also with nine prior convictions. The ninth prior conviction of Carr for burglary was alleged to have resulted in a term in the Oklahoma State Penitentiary at McAlester, Oklahoma. This term of imprison-

ment began while Hall was possibly being detained in the same penitentiary as the result of his second prior conviction on July 5, 1956.

Carr's trial was disposed of apart from the instant case. The jury in the instant case was unable to agree as to Hall's guilt on the first count but it was unanimous on the second count, that is to say, attempted burglary of the Babalu Cafe located at 715 "G" Street in Fresno. It must be remembered that the entire record of evidence involving the alleged burglary under the first count of the Dona Maria Cafe at 1342 Tulare Street and the alleged attempted burglary of the Babalu Cafe under the second count was before the jury; while the charge made in the first count was later dismissed, it is quite proper to reflect that all of the evidence in the case could have been considered legitimately by the jury with respect to the conviction under the second count.

The appellant makes two contentions on this appeal: in the first place, it is claimed that the evidence was insufficient to establish guilt, and, secondly, it is urged that the prosecution committed prejudicial error in cross-examination of the appellant concerning prior felony convictions in that the People allegedly extended inquiry to include matters beyond the proper scope of impeachment.

It was never contended by the prosecution that this appellant physically burglarized the Dona Maria Cafe or physically attempted to burglarize the Babalu Cafe. The theory of the prosecution was that the defendant, Larry Hall, was guilty as a principal, because he aided and abetted the activist burglar and participated in those crimes as a stand-by and lookout man for Carr. (*People* v. *McClure,* 133 Cal.App.2d 631, 633 [284 P.2d 887]; *People* v. *Bonilla,* 124 Cal.App. 212, 214 [12 P.2d 64]; Pen. Code, §§ 31, 971.)

It is our duty to inquire only whether there is substantial evidence to justify the guilty verdict. It is not the burden of an appellate court to require proof of a defendant's guilt beyond all reasonable doubt; that is the duty of the jury in the trial court. If the record on appeal shows by substantial evidence: (1) that Carr attempted a burglary of the Babalu Cafe, and (2) that the appellant aided and abetted, advised and encouraged the felony, it is our duty to sustain the conviction. (*People* v. *Eskew,* 206 Cal.App.2d 205, 207 [23 Cal.Rptr. 466]; *People* v. *Villa,* 156 Cal.App.2d 128, 134 [318 P.2d 828]; *People* v. *Perryman,* 250 Cal.App.2d 813, 819-820 [58 Cal.Rptr. 921]; *People* v. *Sawyer,* 256 Cal.App.2d

66, 76 [63 Cal.Rptr. 749] ; *People* v. *Belenger,* 222 Cal.App.2d 159, 163-167 [34 Cal.Rptr. 918].)

There can be no question but that Carr physically attempted to effectuate a burglary at the Babalu Cafe. In the body of his car, when arrested, he had a crowbar and the evidence was that the front door of the cafe had been pried open with the result that the wood was damaged and the lock forced off. In dead of night, Carr was seen by nearby illumination some four times at the doorway of this restaurant, standing part of the time in a position sideways to the door; he was easily alarmed by a passerby and would retreat to his automobile, parked in the vicinity of the cafe, when he became alerted to detection, but would shortly afterwards return to the doorway.

Tony Avila, a night watchman for the Del Monte Corporation, as part of his duties drove around this West Fresno area during the night; he testified that on December 5, 1967, he saw the codefendant, Glenn Adrian Carr, at the Babalu door; Avila drove around the block, and again noticed that this man whom he knew had returned to the restaurant door; again, Carr became alarmed and quickly got into his car and left. Avila followed him for about a half block and then went back to his night-watchman's job, but he saw Carr's automobile pass by again and stop across the street from the Babalu with his automobile lights on. Then, as the night watchman was sitting in his own car by the post office located nearby, he saw Carr coming from across the street at the cafe to his parked automobile. All this time Avila observed that another man was in the Carr vehicle; he did not know who the other man was, and his only identification was that he wore a hat which Hall still wore at the time of his later arrest. Avila followed the Carr vehicle to Kern Street, up to ''H'' and down to Ventura, then back to ''G.'' Carr's automobile was a 1959 Ford, two-tone pink and ivory. After following and observing Carr drive away, Avila went back to the Babalu; he saw that the door was open, confirmed the fact by closer observation, and then told a police officer about it. About that time the Carr vehicle passed again and Avila informed a policeman that it was the car he had seen; soon afterward, officers took Avila down to the mall to identify the car which had been stopped there by them. Both occupants of the Carr vehicle were arrested.

The owner of the Babalu Cafe, Mr. Guzman, was called by the police to come down to his cafe, and he did so at about 3

o'clock in the morning; he found that the door had been pried open and the lock broken; he checked everything in the cafe and saw that it was in order and that there was nothing missing.

We also believe that it has been shown by inference that Larry Hall was a lookout for Carr, and that he thus aided and abetted, advised and encouraged his felonious activities on the night of the alleged crimes. In the first place, Hall conceded time after time on the stand that he was with Carr during the whole night after 9 o'clock; the record shows that he admitted to Officer Del Real that he and Carr were together from approximately 8 p.m. The jury was entitled to accept part of the statements made by Hall and equally entittled to reject other portions of his testimony. If we keep in mind that the appellant admitted that he was with Carr all night, and if other portions of the evidence show that Carr was guilty of the felonies of which he was accused, the logical result follows that Hall knew of all of the activities of his friend Carr on that night, and that he was not the innocent which he claimed he was in other parts of his testimony.

With respect to the Babalu crime, then, the jury could infer that the appellant stayed in the automobile while Carr was prying open the Babalu Cafe door, that he was there for a purpose, and that such purpose involved giving warning as a lookout.

The appellant, having been with Carr all night, must have been aware of Carr's activities at the Dona Maria Cafe, and the inferential evidence of what went on there is an eloquent indication of his guilt during the burglarious foray. The Dona Maria Cafe was entered and robbed with the accompanying help of the crowbar, which was later found under the front seat of the Carr automobile. The criminologist for the county testified that that instrument was used to pry open the music box in the cafe as shown by the striations on part of the metal of the music machine there compared with the form of the crowbar. Besides the coins stolen from the music box, a large paper bag taken from the cafe held some 35 packages of cigarettes, which were also found in the trunk of the Carr automobile. Small change such as is used to activate music boxes was found on Carr and Hall. It is a legitimate conclusion that Carr burglarized the Dona Maria Cafe after it closed and, if Hall was with him, he must have had full knowledge of the felonious activities of his friend. Appellant's counsel logically solicits a viewpoint that the appellant could have been with

Carr all evening without any participation by advice or encouragement of the two felonies engaged in by Carr. Such a contention strains human credulity. In the finding that the appellant was guilty of the Babalu attempt, the jury clearly acted within the limits of reasonable human discretion.

Appellant claims that some of the questions asked by the prosecution were prejudicially erroneous on the subject of whether the two defendants first met in the prison at McAlester, Oklahoma. General admissibility of evidence of old-time friendship between two persons accused of a crime such as that involved in the present appeal is entirely legitimate. Persons who might meet initially on the night of felonies of this kind, or who had known each other for only a short period would not be so likely to join together in committing crimes of this type as those of a certain disposition who had been old-time companions.

As already indicated through one of the nine accusations of former convictions against Carr and one of the three charges of the same type against Hall, it was entirely possible that they had met for the first time in the prison at McAlester, and it is not to be wondered that the question was asked by the deputy district attorney. The record shows the following testimony:

"By Mr. Kiraly: Q. You said you had 2 forgery prior felony convictions. Where was the first one? What state?

"A. Arkansas in '52.

"Q. Did you go to prison for that?

"A. Yes, sir.

"Q. And where was the next forgery conviction that you had?

"A. Oklahoma, '56.

"Q. Did you go to prison for that?

"A. Yes.

"Q. What prison did you go to?

"A. McAlester.

"Q. Is that where you met Carr?

"A. No, sir.

"Q. You knew him there, didn't you?

"A. No, sir.

"Q. Did you see him there?

"A. No, sir. If I did, I—I know I didn't see Carr there. I didn't know Carr in Oklahoma.

"Q. Where did you first meet him?

"A. I mean in the prison—I met him in Oklahoma but not

in prison. Oklahoma City is when I first got acquainted with him.

"Q. Now, you went to prison in California for strongarmed robbery?

"A. Yes.

"Q. When was that?

"A. That was '65 when I violated probation here but this incident happened in '63.

"Q. But was the conviction in 1963?

"A. Yes.

"Q. But then in 1965 you went to prison?

"A. Yes.

"Q. What did you do then?

"A. I had a disturbance with my common law wife.

"Q. So that's when.

"A. I violated my parole.

"Q. As to the strongarmed robbery then you were sent to prison for your strongarmed robbery at that time?

"A. That's right.

"Q. You are on parole now, aren't you?

"A. I am.

"Q. Now, have you been convicted of any other felonies?

"A. No."

The legitimate answer to the contention made by the appellant is that no objection was made in the court below to any of the questions; it was the duty of the appellant, if his counsel thought that the questions asked by the district attorney were improper, to voice an objection in the trial court; it is now too late to raise the issue. (*People* v. *Ford,* 89 Cal.App. 2d 467, 470 [200 P.2d 867]; *People* v. *Howard,* 166 Cal.App. 2d 638, 648 [334 P.2d 105].)

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 18, 1969.