[Crim. No. 14268. Third Dist. Mar. 12, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY LEE BRADY, Defendant and Appellant.

126

128

COUNSEL

Andrew French Loomis, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Shirley A. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

BLEASE, Acting P. J.—Defendant was convicted by a jury of burglary in the second degree (Pen. Code, §§ 459, 460, subd. 2) on grounds he perpetrated the offense or aided and abetted its commission (Pen. Code, § 31).[1] Because the jury could have founded its verdict upon the theory of aiding and abetting, we will reverse the judgment for failure of the trial court to instruct the jury that an intent to aid the perpetrator, formed after the perpetrator's entry into the burgled premises, does not satisfy an element of the offense of aiding and abetting a burglary. In the event of retrial, we also hold that second degree burglary, as currently defined (see § 460), is not a serious felony (See §§ 667, subd. (d); 1192.7, subd. (c)(18)) and for that reason cannot support the imposition of an enhancement for a prior serious felony pursuant to section 667.

FACTS

On September 11, 1984, Michael Brummett was walking home to his apartment in Chico sometime after 6 p.m. At the corner he encountered Chris Arnold with three other people, defendant, Teddy Rose, and a female. They appeared to be drunk. Arnold was in the back seat of a car and Brummett entered the car at Arnold's invitation. Arnold and the other three then

---

[1]All further unspecified references to sections are to the Penal Code.

accompanied Brummett to his apartment. Arnold and Brummett went into the apartment where Arnold tried to persuade Brummett to accept some jewelry in trade for money and drugs. Brummett declined and asked Arnold to leave.

They went outside. Defendant got out of the car and belligerently insisted that Brummett examine his watch which he wished to trade for drugs. Brummett shook off defendant's grasping hand. Defendant acted as if he was going to enter Brummett's apartment and Brummett told him to stay out. A neighbor approached and asked if Brummett would go with her on an errand. He agreed and left with her. When he returned, about 20 minutes later, he went into his apartment and found that his television and his roommates' stereos were missing.

Mark Turnbaugh was in the bedroom of an upstairs apartment in the building. He watched Brummett, Arnold, and defendant arguing outside the apartment. After Brummett left, the car Arnold and defendant were traveling in also left. Five minutes later that car returned. Turnbaugh saw defendant and Arnold get out and walk toward Brummett's apartment. From Turnbaugh's vantage point one cannot see the doorway of Brummett's apartment. There is an eave which projects over the doorway area. Defendant and Arnold passed out of view. When they reappeared defendant was carrying two portable stereos. Defendant and Arnold returned to their car.

The day after the incident Officer Benedetti of the Redding police arrested defendant's wife at the South City Park in Redding. Defendant was lying nearby on the ground. He got up and staggered toward the police car and attempted to let his wife out. Benedetti placed him under arrest for public drunkeness. Defendant's jacket was on the ground and beneath it a stereo. Benedetti asked if the stereo was defendant's to determine if he should take it along. At this point another officer who had arrived told Benedetti that the stereo looked like one that had been taken in a burglary the day before. Defendant said the stereo was not stolen, that he had had it for a couple of months. The stereo was one of the two that had been taken from Brummett's apartment.

Arnold testified for the defense as follows. He first met defendant about midday on the day of the burglary, September 11, 1984. Later in the day he asked if defendant could give him a ride so that he could get his possessions from his apartment as he was having a controversy with his roommates. Defendant arranged for transportation in Teddy Rose's car. When they arrived at Brummett's apartment Brummett was leaving. They talked for a few minutes and Brummett left. Defendant never left the car during this conversation. When Brummett left Arnold asked defendant to come and help

him get his possessions. He invited defendant into the apartment but defendant declined, waiting outside the threshold. He handed defendant the two stereos. They went back to Rose's car and departed. Later defendant traded him a pocket watch for one of the stereos. Arnold admitted that he had pled guilty to burglary for his role in this offense. He did not recall what happened to the other stereo and the television. He was arrested at the bus station at 7 p.m. on September 11, 1984. The custody property receipt for his subsequent booking does not list a pocket watch.

Two other witnesses testified that they overheard conversations between defendant and Arnold on the afternoon of September 11, 1984, in which Arnold asked defendant to give him a ride to his house.

Teddy Rose testified for the defense as follows. He agreed to provide transportation for Arnold to get gasoline for a vehicle that had run out of gas. On the way Arnold said he had to go to the apartment first. When they arrived Arnold went to the door and tried to get in but no one answered. They drove away but met Brummett at the corner. They picked him up and returned to the apartment. Brummett unlocked the door with a key and he and Arnold had a discussion. Eventually defendant got out of the car and took part in the discussion. Brummett then left with his neighbor. Arnold went into the apartment and handed the two stereos or the television to defendant who stood outside the threshold.

Officer Patrick Tennant of the Redding police testified in rebuttal that he spoke with Rose two days previously. At that time Rose told him that defendant's wife had asked him to testify that defendant had never entered Brummett's apartment. Rose said that he intended to tell the truth which is that defendant had gone into Brummett's apartment. Tennant also testified that, when Rose was interviewed on the day of the burglary, he said defendant had gone into the apartment.

DISCUSSION

I

Defendant was tried as a principal in the crime of burglary on the theories that he was either a perpetrator or an aider and abettor of the offense. Defendant offered two instructions, which together could be read as informing the jury that it could not convict him of aiding and abetting the burglary if he did not know of Arnold's intent to steal from Brummett's apartment until after Arnold entered it.[2] The court refused both instructions. Defendant

---

[2] The proposed instructions read: [1] "Aider and abettor [¶] You may not convict the defendant of burglary unless you are satisfied beyond a reasonable doubt that he shared the intent

argues that the court erred because the instructions correctly state the law and are necessary to define the offense of aiding and abetting a burglary as applied to the facts in this case. While the proffered instructions are imperfect, defendant's claim has merit.

A.

Defendant takes his theory of culpability from *People* v. *Markus* (1978) 82 Cal.App.3d 477 [147 Cal.Rptr. 151]. The person charged as the aider and abettor in that case was the driver of a car, parked in front of the burgled residence. The actual burglar, carrying his loot, had just left the residence and entered the car. Defendant claimed that he had no knowledge of his companion's criminal purpose until that moment. (*Id.,* at p. 480.) The jury asked if defendant could be found guilty of aiding and abetting the burglary if this claim were true. The trial court answered yes. The reviewing court reversed the conviction, reasoning: "It is the intent at the moment of entry of the structure which appellant must have shared with his companion in order to be guilty of burglary as a principal. If appellant did not know at that moment what was afoot, there is no way that he could have shared the specific criminal intent required for guilt as a principal. If, as the jury may have believed, appellant did not learn that there had been a burglary until his companion entered the automobile, he could not have shared his companion's criminal intent at the moment of entry; he simply could not have been a principal. A contrary holding would eliminate the statutory distinction between principal and accessory. The trial court's instruction to the contrary was mistaken." (*Id.,* at pp. 481-482.)

*Markus* points in the right direction. But it overstates the case in implying that the only material distinction "between principal and accessory" is that premised upon timing. As section 32 says, liability as an accessory is premised among other things upon aid which is rendered "*after* a felony has been committed . . . ." (Italics added.) However, not all aid rendered after commission falls into the category of an accessory; the accessory must also act "with the intent that [the] Principal may avoid or escape from arrest, trial, conviction or punishment . . . ." ▮ Postoffense aid that is not accompanied by such an intent is either not criminal or is culpable only under a statute pertaining to particular conduct, such as receiving stolen property. (See Fletcher, Rethinking Criminal Law (1978) § 8.5.4, pp. 645-646.)

---

to steal at the moment of the actual entry by another. If the defendant did not have this intent at that moment, you may not convict him of burglary. [¶] If you have a reasonable doubt whether the defendant shared this intent at the moment of entry, you must give him the benefit of that doubt and find him not guilty."

[2] "Assistance after commission of crime [¶] Any assistance offered by the defendant to the perpetrator of the crime after the crime has been committed is insufficient to establish that he aided and abetted the perpetrator in the commission of the offense."

*Markus* is correct insofar as it is premised upon distinctions which the Legislature has drawn in grading the culpability of conduct by the separate classification, definition, and punishment of offenses. To state the obvious, the Legislature has, by so grading offenses, declared its purpose that separate crimes should be treated, in fact, as different crimes. That purpose would be violated if one crime could be made into another, either directly, by admixing their elements, or indirectly by transmuting the element of one crime into the element of a different crime by circumstantial reasoning. (See *People* v. *Spann* (1986) 187 Cal.App.3d 400 [232 Cal.Rptr. 31].) That would occur, as *Markus* points out, if the line which marks the completion of an offense was obliterated so as to "eliminate the statutory distinction between principal and accessory. . . ." But this is a special case of the general rule that, for purposes of culpability as a principal, a crime is completed when all of the statutory elements of the offense have been fulfilled by the perpetrator.

### B.

The primary significance of the defendant's instructions arises from the fact that section 31 defines, as principals in a crime, all persons who "directly commit the act constituting the offense, or aid and abet *in* its commission . . . ." (Italics added.)    ■    As a principal, the same culpability and the same punishment attach to an aider and abettor as to one who directly commits it. *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318] holds that a person aids and abets the "commission of a crime" (*id.*, p. 561; see *People* v. *Rogers* (1985) 172 Cal.App.3d 502, 515 and 515, fn. 17 [217 Cal.Rptr. 809]) when he aids the perpetrator of an offense, knowing the perpetrator's unlawful purpose and intending by his act of aid to facilitate the offense. This doctrine snares all who intentionally contribute to the accomplishment of a crime in the net of criminal liability defined by the crime, even though the actor does not personally engage in all of the elements of the crime.

■    "The logical basis for conviction as an aider and abettor is that with knowledge of the unlawfulness of the act, one renders some independent contribution to the commission of the crime or otherwise makes it more probable that the crime will be successfully completed than would the case absent such participation. (Perkins, Criminal Law, p. 574.)" (*People* v. *Belenger* (1963) 222 Cal.App.2d 159, 163 [34 Cal.Rptr. 918].) As a corollary to that proposition, one cannot render an independent contribution to the commission of a crime after it is over. Intentional aid or encouragement given the perpetrator after the crime does not advance the crime and, while such conduct *may* be criminal, because it constitutes another offense, the measure of culpability as an aider and abettor is not the completed offense but the offense in progress. Thus a pivotal question for liability as an aider

and abettor is—When is the crime over? That point turns uniquely upon the elements of the crime aided and abetted.

"A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it . . . ." (§ 15.) ■ The duration of an offense depends upon the definition of the offense. The nature of the act forbidden reveals to us what is before, during, and after it. For example, a larceny entails both the taking and asportation of stolen property. (See e.g. *People* v. *Meyer* (1888) 75 Cal. 383, 384-385 [17 P. 431]; also see 1 Witkin, Cal. Crimes (1963) Crimes Against Property, § 378, p. 351.) One who first acquires knowledge of the perpetrator's criminal purposes during the asportation of the stolen property and aids in the asportation may be convicted as an aider and abettor of that theft. (See *People* v. *Jardine* (1981) 116 Cal.App.3d 907, 916-912 [172 Cal.Rptr. 408]; Annot., Assisting in Transportation or Disposal of Property Known to Have Been Stolen as Rendering One Guilty of Larceny (1924) 29 A.L.R. 1031.) By contrast, the accomplishment of a larceny is not the gravaman of burglary and accordingly asportation, and consequently aid in asportation alone, has nothing to do with culpability as a principal in the burglary offense.

A burglary is committed by one who "enters [a defined structure] with intent to commit grand or petit larceny or any felony . . . ." (§ 459.) A larceny is only one of the purposes encompassed by this offense. Any felony will do. ■ Moreover, the proscribed intent need not be satisfied to commit a burglary. The interest protected by the criminal sanction is the security of the occupant against *entry* into the structure with a proscribed intent. (See Perkins, Criminal Law (2d ed. 1969) p. 206.) The crime is complete at the point of entry. For that reason, a "burglary cannot be committed unless the specific intent exists at the time of entry and [ ] the jury should be so instructed . . . ." (*People* v. *Hill* (1967) 67 Cal.2d 105, 119 [60 Cal.Rptr. 234, 429 P.2d 586].) With exceptions not relevant here, one who enters a structure without intent to commit a theft or a felony is not a burglar. (See e.g., *People* v. *Lowen* (1895) 109 Cal. 381 [42 P. 32]; cf. *People* v. *Young* (1884) 65 Cal. 225, 226 [3 P. 813].) If the criminal intent to commit a larceny or felony in a structure that has been entered arises after entry, the offense committed, if any, is not burglary. If the intent is carried out, a separate larceny or felony offense occurs. But the offense of burglary is over at the point of entry.

As a principal in an offense, the culpability of the aider and abettor is the same as the perpetrator. That is because they are involved in the *same* offense. Thus, as section 31 explicitly provides, a person is culpable as the aider and abettor of an offense only if he "aid[s] and abet[s] *in* its commission . . . ." (Italics added.) ■ If the putative aider and abettor first learns of the larcenous or felonious intent of the perpetrator of a burglary after his

entry, i.e. after the commission of that offense, he has not, by the explicit terms of section 31, aided and abetted a burglary no matter what assistance is rendered at that point. (See *Markus, supra,* 82 Cal.App.3d 477; *Jardine, supra,* 116 Cal.App.3d at p. 920; cf. *People* v. *Morga* (1969) 273 Cal.App.2d 200, 208 [78 Cal.Rptr. 120]; see generally *People* v. *Tyler* (1968) 258 Cal.App.2d 661, 667 [65 Cal.Rptr. 907]; *People* v. *Jones* (1965) 232 Cal.App.2d 538, 540 [42 Cal.Rptr. 925].) Such an actor may become an accomplice in a different offense committed *subsequent* to entry if he aids and abets its commission. Thus if a burglar carries out a larcenous intent and is knowingly aided and abetted by another in that criminal venture, culpability as a principal in a *larceny* may attach. This result preserves the symmetry of culpability of the aider and abettor consistent with the language of section 31 and with his own surrogate mens rea.

In assessing the scienter required of an aider and abettor, the critical element is *his* intent. (See e.g. *People* v. *Blackwood* (1939) 35 Cal.App.2d 728, 733 [96 P.2d 982] [different perspectives warrant finding that aider and abettor was guilty of manslaughter and perpetrator of murder]; Perkins, Criminal Law, *supra,* at p. 662.) Since a burglary is committed at the point of entry by the perpetrator of the offense, some of the aid must be given and the intent formed to facilitate the burglary must occur prior to or at the time of such entry.

Where the statutory issue is not whether the defendant is a principal in the crime of burglary, different rules may apply in measuring the completion of a burglary. ■ For example, a burglar who kills after entering to steal does so "in the perpetration of . . . burglary" within the meaning of the felony-murder rule embodied in section 189. (*People* v. *Chavez* (1951) 37 Cal.2d 656, 667-670 [234 P.2d 632].) ■ Similarly, the use of a firearm by the burglar after the entry is a use "in the commission" of a burglary, as that language is used in the enhancement provisions of section 12022.5. (*People* v. *Walls* (1978) 85 Cal.App.3d 447, 452-454 [149 Cal.Rptr. 460]; see also former § 460 [Stats. 1955, ch. 941, § 1].) "The meaning of language is to be found in its [semantically permissible] applications." (*California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (*Godinez*) (1986) 177 Cal.App.3d 855, 859, fn. 1 [223 Cal.Rptr. 246].) It is the language and purpose of each of these statutes which distinguishes it from the statutory scheme embodied in section 31. Given what sections 189 and 12022.5 are about, for their purposes a burglary cannot be over at the point of entry. Such a reading would produce results at odds with their purposes. However, to preserve the symmetry of culpability of principals, section 31 must be differently read. A thief is not guilty of burglary when his larcenous intent arises after his entry. The culpability of the assistant to the thief, whose intent to aid does not arise until after the entry of the thief, must be judged by the same rule.

## C.

The jury was instructed that "[a] person aids and abets the commission of a crime when he or she, (1) with knowledge of the unlawful purpose of the perpetrator and (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, by act or advice aids, promotes, encourages or instigates the commission of the crime of burglary." (CALJIC No. 3.01 (1984 rev.ed.)) This instruction, modeled on that recommended in *Beeman,* was meant to cure perceived ambiguities in the aiding and abetting instructions; but not the one revealed here. (See *People* v. *Rogers, supra,* 172 Cal.App.3d at p. 509.) It does not inform the jury when the "commission" of the burglary is over; it does not say at what point the putative aider and abettor must gain the knowledge of the perpetrator's unlawful purpose. It is ambiguous precisely because it does not mesh with the burglary instruction so as to specify that the knowledgeable aid must be rendered in connection with the entry of the burglarized structure.[3]

Defendant sought instructions which resolved the ambiguity by informing the jury that an intent to aid Arnold which was formed after Arnold's entry of Brummett's apartment was insufficient to constitute aiding and abetting the offense of burglary. This is a definitional and not a pinpoint instruction.
A pinpoint instruction pinpoints the evidence in the case in the light of defendant's theory of defense and instructs the jury that the People bear the burden of ultimate persuasion on the issue which the instruction pinpoints. (See *People* v. *Adrian* (1982) 135 Cal.App.3d 335, 338-339 [185 Cal.Rptr. 506].) It *presupposes* that the jury has been adequately instructed on the elements of the offense charged. But where, as here, the general instructions fail that definitional task, the defendant is entitled to an amplifying instruction which remedies the definitional defect. (See *People* v. *Kimbrel* (1981) 120 Cal.App.3d 869, 872 [174 Cal.Rptr. 816].) That is what the defendant sought by his instructions.

The first informed the jury that the aider and abettor must share the intent of the perpetrator. The second emphasized that aid given after the commission of the crime is insufficient to establish aiding and abetting. The instructions are potentially misleading.

The first incorrectly suggests that defendant was *required* to share Arnold's intent to steal. That may be but need not be the case. "One who aids and abets does not necessarily have the intention of enjoying the fruits of the crime." (*People* v. *Terry* (1970) 2 Cal.3d 362, 401; citation omitted [85

---

[3]The jury was instructed in the language of CALJIC No. 14.50 (1981 rev. ed.) that: "Every person who enters any structure of the type shown by the evidence in this case with the specific intent to steal . . . is guilty of the crime of burglary."

Cal.Rptr. 409, 466 P.2d 961].) ▐ ▐ ▐ ▐  ▐  The aider and abettor must intend to *facilitate* the commission of the offense whether or not he shares in its fruits.[4] To fulfill that requirement here, defendant must know Arnold's criminal purpose at the time he entered the structure and intend to facilitate it by aid or encouragement at that point (*People* v. *Beeman, supra,* 35 Cal.3d at p. 560), e.g., by accompanying him to the doorway for the purpose of carrying off whatever he takes from the premises. (See *Belenger, supra,* 222 Cal.App.2d at pp. 163-164.)

The second instruction may also mislead the jury. It is correct to say that aid given after the commission of the offense is not a *criterion* of aiding and abetting, and to that end evidence of such aid is alone insufficient for conviction. However, evidence of postentry aid is relevant to show the defendant's intent to aid Arnold *prior* to entry.

Nonetheless, these defects in the proffered instructions are not sufficient to excuse the failure of the court to give an adequate instruction. The instructions together sought to distinguish aiding and abetting the commission of an offense from the wholly different case of aiding the perpetrator after its commission. While not presenting the correct legal theory exactly, they were sufficient to acquaint the trial court with the nature of defendant's defense. ▐  The trial court must correct defects in proffered instructions where the nature of the defendant's theory is made clear to it. (See e.g., *People* v. *Guthrie* (1983) 144 Cal.App.3d 832, 842 [193 Cal.Rptr. 54].) ▐  The failure was material to the facts of the case.

The evidence would support an inference that if defendant did not enter the apartment, he nonetheless knew Arnold's criminal intent at the time of entry. The evidence would also support the inference that the defendant did not learn of Arnold's criminal purpose until after Arnold left Brummett's apartment. Arnold testified that after Brummett left, he asked defendant to come and help him get *his* possessions. He invited defendant into the apartment but defendant declined, waiting outside the threshold. He handed defendant the two stereos. They went back to Rose's car and departed. Defendant did not testify. His counsel argued that defendant did not know of Arnold's burglarious intent at any time. However, defendant recognized that the jury might conclude that he should have come by that knowledge

---

[4]Given the complexity of human behavior, the existence of the intent required for commission of a crime may be blurred by the presence of multiple intents. An intent is forward looking; it is the end in view, the object to be accomplished by the action taken, which is its criterion. (See Anscombe, Intention (2d ed. 1976).) An action may be taken with many ends in view. Where one of them is an element of the offense, it satisfies the scienter required for the offense, notwithstanding the presence of additional and extraneous intents. For aiding and abetting, the end in view must be the facilitation of the offense. That other ends are also in view ought not to deflect the analysis.

at the time he learned of the kind of possessions Arnold was removing when Arnold handed him the stereos after leaving Brummett's residence. The jury might have concluded that *at that point* defendant gave knowledgeable aid to Arnold and thereby was guilty of aiding and abetting the burglary. This possibility gives rise to the instructional ambiguity.

## D.

The Attorney General argues that the instructions that were given, CALJIC No. 3.01 on aiding and abetting, and CALJIC No. 14.50 on burglary, adequately embrace defendant's theory. (Cf. *People* v. *Richard* (1978) 85 Cal.App.3d 292, 300-302 [149 Cal.Rptr. 460].) As we have shown, CALJIC No. 3.01 is the source of the ambiguity. CALJIC No. 14.50, which defines burglary, does say that ". . . at the time of the entry, [the person who entered]" must have the intent to steal. However, if the jury believed that defendant did not personally enter the apartment, there is nothing in this instruction which suggests that the defendant's knowledge of the *perpetrator's* intent must be gained prior to or at the time of entry. The defendant's culpability is dependent upon his own intent. (See e.g. *People* v. *Blackwood, supra,* 35 Cal.App.2d 728.)

Two other instructions bear examination. The jury was informed, in pertinent part, that "[t]he mere fact that a person was in conscious possession of recently stolen property is not enough to justify his conviction of the crime [charged]. . . . It is, however, a circumstance to be considered in connection with other evidence." The jury was further instructed that "[t]o aid and abet in the commission of a Burglary, there must exist a union or joint operation of act or conduct, and both a certain mental state and a certain specific intent in the mind of that person . . . ."

These instructions do not resolve the ambiguity; that is, they do not unambiguously inform the jury that it cannot convict defendant as an aider and abettor upon the basis of knowledge gained *after* Arnold's entry into Brummett's apartment. Accordingly, it was error to fail to give a distinguishing instruction.

## E.

That brings us to the final question: Was the error harmless? As shown, the jury may have convicted defendant of the crime of burglary either on the inference that he knew of Arnold's intent before the entry or on the inference that he learned of it thereafter. Both inferences are supported by the record. The aiding and abetting instruction did not inform the jury that the difference was critical to conviction. Neither did counsel for the parties

in their arguments to the jury. The argument of the district attorney, if anything, compounded the defect. In challenging the defendant's claim that he did not know anything about the burglary, the district attorney suggested that defendant should have known that the items *removed* from Brummett's apartment (for instance, the two stereos) were burglarized because it is "common knowledge" they are "targets of burglary." Further, defendant should not have believed Arnold's story that he was an occupant of the burgled apartment and was moving to another place because "this person who sought assistance to move property doesn't have any clothes, any personal items, any toothbrush . . . ." These arguments were offered to prove defendant's knowledge of Arnold's criminal intent. They bear the interpretation that knowledge gained after entry may be used to prove defendant guilty. While harmless with respect to culpability as a perpetrator, it is prejudicial with respect to the aiding and abetting theory.

One measure of the harmfulness of the ambiguity in CALJIC No. 3.01 is the standard suggested by cases following *Beeman, supra. Beeman* deferred resolution whether a constitutional test of harmless error applies, finding that the error in the aiding and abetting instruction was reversible in any event under the standard of *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. (*Beeman, supra,* 35 Cal.3d at pp. 561-563.) Later, *People* v. *Acero* (1984) 161 Cal.App.3d 217, 226-227 [208 Cal.Rptr. 565] and *People* v. *Rogers, supra,* applied the harmless error standard of *People* v. *Garcia* (1984) 36 Cal.3d 539 [205 Cal.Rptr. 265, 684 P.2d 826]. *Garcia* held that "instructions or omissions which deny a defendant his right to have the jury decide each element of a charged offense are necessarily reversible error." (*Id.,* at p. 550.) That right is obviously invaded if the challenged instruction permits conviction of the defendant for a crime not committed. However, with respect to the intent required of an aider and abettor, "[n]ot all instructional error results in [its] removal . . . from jury consideration, as when intent is not put in issue, is conceded, or is covered by other instructions." (*People* v. *Rogers, supra,* 172 Cal.App.3d at p. 508.)

None of these exceptions applies here. The defendant's requested instructions put in issue the intent required of an aider and abettor of a burglary on the facts in this case. (Cf. *People* v. *Rogers, supra,* 172 Cal.App.3d at pp. 511-512.) The failure of the trial court to properly instruct the jury so as to remove the ambiguity in CALJIC No. 3.01 denied the jury the opportunity to determine whether the defendant had the requisite preentry intent or, on the contrary, an immaterial (postentry) intent. Accordingly, it could have found the defendant guilty of a crime he did not commit. Following *Garcia,* we must conclude that the error was prejudicial.

Whether or not the per se rule of *Garcia* applies (cf. *Rose* v. *Clark* (1986) 478 U.S. 570 [92 L.Ed.2d 460, 106 S.Ct. 3101] and *People* v. *Rodriquez*

(1986) 42 Cal.3d 1005, 1012-1013 with *People* v. *Modesto* (1963) 59 Cal.2d 722 [31 Cal.Rptr. 225, 382 P.2d 33]), the error is one of constitutional dimension (*In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 905 S.Ct. 1068]), requiring, under *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065], that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." That standard cannot be satisfied. Since the inference that the defendant learned of Arnold's criminal purpose after the entry of the burgled premises is a permissible one, we cannot say beyond a reasonable doubt that the jury rejected it and thereby found the defendant guilty of a crime he did not commit. (See e.g. *People* v. *Green* (1980) 27 Cal.3d 1, 67-74 [164 Cal.Rptr. 1, 609 P.2d 468].) Accordingly, we cannot say that the error was harmless beyond a reasonable doubt and the judgment of conviction must be reversed. Our conclusion that the judgment must be reversed leads us to consider the defendant's sentencing claims should he be retried for second degree burglary.

## II

We begin by noting that defendant cannot be tried again for first degree burglary. By his conviction of second degree burglary he was acquitted of first degree burglary. (See *In re Hess* (1955) 45 Cal.2d 171, 176 [288 P.2d 5].) Since he may be retried and again convicted of second degree burglary, we must resolve his contention that, because under the present law (applicable on retrial) second degree burglary is not a serious felony, section 667 precludes the use of his prior convictions of serious felonies to enhance his sentence.

Section 667, subdivision (a), provides that a "person convicted of a serious felony" shall receive a five-year "enhance[d]" sentence for each prior conviction of a "serious felony . . . ." A "serious felony" is defined by the matter "listed" in section 1192.7. (§ 667, subd. (d).) Subdivision (c)(18) of section 1192.7, as recently amended, lists "burglary of an inhabited dwelling house" as a serious felony. (Stats. 1986, ch. 489, § 1.) This change codifies the case law, which held that the superceded language, "burglary of a residence," meant the burglary of an inhabited dwelling. (See *People* v. *O'Bryan* (1985) 37 Cal.3d 841, 844-845 [210 Cal.Rptr. 450, 694 P.2d 135]; *People* v. *Guthrie, supra,* 144 Cal App.3d at pp. 837-840.)

Prior to the 1982, section 460, subdivision 1, defined first degree burglary as including the burglary of an inhabited dwelling committed *in the nighttime.* Since second degree burglary was defined as "all other kinds of burglary" (subd. 2), a second degree burglary could consist of a burglary of an inhabited dwelling in the *daytime.* By virtue of section 1192.7, such a

second degree burglary was a serious felony. (*People* v. *Jackson* (1985) 37 Cal.3d 826, 835, fn. 11 [210 Cal.Rptr. 623, 694 P.2d 736.) The upshot of this is that the line between a first and second degree burglary did not match the line between a serious and nonserious felony for purposes of section 667. Consequently, a charge of second degree burglary, without appropriate detail, did not reveal whether it was of an inhabited dwelling, a serious felony, or not. In order to give retroactive effect to the enhancement provisions of section 667, subdivision (c)(18) of section 1192.7 was interpreted as "referring not to specific criminal offenses, but to the criminal conduct described therein, and applicable whenever the prosecution [separately] pleads and proves that conduct." (*People* v. *Jackson, supra,* 37 Cal.3d at p. 832.)

The separate pleading and proving of such conduct, for purposes of determining whether a second degree burglary was a serious felony, was rendered unnecessary by amendment of the burglary statute in 1982. The condition limiting the first degree burglary of an inhabited dwelling to a nighttime burglary, in subdivision 1 of section 460, was deleted, thus eliminating that offense from the ambit of ("other") second degree burglaries provided by subdivision 2 of that provision. (Stats. 1982, ch. 1297, § 1, p. 4786.) After this amendment, only a first degree burglary (of an inhabited dwelling) is a serious felony within the meaning of sections 667 and 1192.7, subdivision (c)(18). This has a direct consequence for the application of section 667 to this case.

Section 667 provides that " . . . any person convicted of a serious felony," who has been previously so convicted, shall receive an additional five-year sentence for each such prior conviction. The defendant's argument, simply put, is that the "burglary of a dwelling house" is now limited to the first degree burglary of an inhabited dwelling and consequently a second degree burglary cannot statutorily serve as the predicate for an enhanced sentence. The argument is grammatically impeccable. Substituting, as relevant here, first degree burglary ("of an inhabited dwelling") for "serious felony" in section 667, subdivision (a), produces the following: Defendant's sentence may be enhanced for his prior serious felonies only if he is "convicted of a [first degree burglary of an inhabited dwelling] . . . ." He was not, and cannot be, so convicted. Conviction of a second degree burglary, the statute tells us, will not do.

▮ Nonetheless, it is claimed that the fact is clear that the burgled structure was an inhabited dwelling and that, notwithstanding the jury's finding to the contrary, the verdict must be attributed to lenity. That being the case, it is argued, the *trial court* may make a contrary finding "as a matter of law," that the offense was "burglary of a residence." Not so. The trial court has

no such power. The jury passed on the gravity of the offense, finding it to be a second degree burglary. Section 667 rules that finding out as a predicate for enhancement of the sentence.

The judgment in case number 82014 is reversed.[5]

Sparks, J., and Sims, J., concurred.

---

[5]The defendant was also charged in case number 82257 with the offense of receiving stolen property. (Pen. Code, § 496.) He pled guilty to that offense and was sentenced to a term of two years. That sentence was to be served concurrently with the sentence in this case, number 82014. No appeal was taken from that judgment.