[No. G003774. Fourth Dist., Div. Three. Sept. 30, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN WILLIAM FORTE, Defendant and Appellant.

1318

---

**COUNSEL**

Jerome P. Wallingford, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, William Wood and John T. Swan, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**SONENSHINE, J.**—A jury convicted Stephen William Forte of burglary. (Pen. Code, § 459.)[1] He raises several issues, but we need address only one. Forte contends the trial court erred in instructing the jury on aiding and abetting. We agree and reverse the judgment.

**I**

On the morning of June 8, 1985, Cynthia McCanne left her home to attend a garage sale. As she left, McCanne locked her front door with a double dead bolt lock which required a key to open it from either inside or outside.

While McCanne was away, her next-door neighbor, Peggy Roberts, looked out her bathroom window and saw William Forte standing by McCanne's front door. Peggy had known Forte for years; he was a good friend of her son, Paul, and had been living in his car parked outside the Roberts's home. It appeared to her Forte had just closed McCanne's door behind him. Thinking a burglary had just taken place, Peggy screamed, "Police." She also noticed McCanne's back door was open.

The police told McCanne about the burglary upon her return home. Several items were missing, including a guitar, power tools and jewelry. Police investigators discovered the front door dead-bolted shut and theorized the back door was the point of entry.

Later that morning, Paul approached a neighbor of McCanne's and offered to sell a gold bracelet and necklace. Paul left the jewelry with the neighbor, who returned the articles to McCanne. These were items taken in the burglary.

On July 15, 1985, Detective James Warnack interviewed Forte about the burglary. Forte told the detective he had been living in his broken-down car for several weeks, parking it outside the Roberts's residence. While working on his car, Forte heard Paul call to him from McCanne's house. After

---

[1] All statutory references are to the Penal Code.

walking to the front door, he saw his friend inside the residence. Paul opened the front door and asked him to help take the McCannes' property, but Forte refused. He decided to leave when Peggy yelled she was calling the police.

After further investigation, Forte was interviewed again. This time Warnack told Forte he did not believe his earlier version because the front door could not have been opened without a key; he accused Forte of planning the burglary with Paul. Replying, "You are right," Forte told Warnack the following story: Paul, needing money to buy drugs, asked for Forte's help in burglarizing the McCanne house. Forte agreed. Paul planned to enter the house from the back and let Forte in through the front, but he could not open the door. Forte turned to leave when he heard Peggy scream, and fled the area on foot.

At trial, Forte denied participating in the crime. He testified Paul approached him that morning, told him he needed money for drugs, and asked for Forte's help in carrying tools from the McCanne house. Paul told Forte he would enter through the back and let Forte in the front door, but Forte refused to participate.

Forte further testified he saw Paul inside the McCanne residence 15 minutes later. Paul called out to Forte, who walked to the front of the house. When asked why he did this, Forte testified, "I don't know." Paul again tried to persuade Forte to help him. Forte turned to walk away when he heard Peggy yell. He left the area because he was afraid the police would mistakenly believe he was involved in the burglary.

Forte denied confessing to Warnack. He testified Warnack told him (1) Forte knew Paul was going to burglarize the house, and (2) Paul's plan included having Forte help him carry away the stolen property. Forte replied, "That's right," merely as an acknowledgement to these statements. He denied admitting he agreed to help Paul or share the money.

The prosecution's theory was Forte aided and abetted the burglary committed by Paul. Forte requested the following instruction: "You may not convict the defendant of burglary unless you are satisfied beyond a reasonable doubt that he shared the intent to steal at the moment of the actual entry by another. If the defendant did not have this intent at that moment, you may not convict him of burglary. [¶] If you have a reasonable doubt whether the defendant shared this intent at the moment of entry, you must give him the benefit of that doubt and find him not guilty." The trial court

refused the instruction, stating CALJIC No. 3.01[2] covered the same subject matter.

## II

Forte contends the trial court should have instructed the jury that intent to aid and abet a burglary must be formed prior to or at the time of entry. We agree.

*People* v. *Brady* (1987) 190 Cal.App.3d 124 [235 Cal.Rptr. 248] is on point. There, an eyewitness saw Brady and Arnold approach the front door of an apartment but could not see whether they entered. A few minutes later the witness saw Brady, carrying two portable stereos, return to the car with Arnold. The next day Brady was arrested while in possession of the stereo stolen in the burglary.

Brady's defense was lack of knowledge a burglary took place. Defense witnesses testified Brady believed Arnold rented the burglarized apartment and merely accompanied Arnold to help him move. Brady never entered the apartment, and later traded a pocket watch for one of the stereos. Brady asked for the identical instruction Forte requested, but the trial court refused.

The *Brady* court held it was error not to give the instruction because it "sought to distinguish aiding and abetting the commission of an offense from the wholly different case of aiding the perpetrator after its commission." (190 Cal.App.3d at p. 136.) The court explained the liability of an aider and abettor is the same as the perpetrator; both are, by definition, principals (§ 31) because they are involved in the same offense. That offense, burglary, is complete when the perpetrator enters the residence with the specific intent to commit a felony. (*People* v. *Morlock* (1956) 46 Cal.2d 141, 146 [292 P.2d 897].) Thus, to be a principal, the aider and abettor must intend to facilitate the burglary prior to or at the time of entry. If this intent is formed *after* the entry by the perpetrator, the aider and abettor cannot be a principal; he is no longer aiding the same offense because the burglary has been completed. Aiding and abetting at this stage

---

[2] CALJIC No. 3.01 was given as follows: "A person aids and abets the commission of a crime when he or she, one, with knowledge of the unlawful purpose of the perpetrator and, two, with the intent or purpose of committing, encouraging, or facilitating the commission of the offense by act or advice aids, promotes, encourages, or instigates the commission of the crime. [¶] A person who aids and abets the commission of a crime need not be personally present at the scene of the crime. [¶] Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting. [¶] Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting."

may subject the actor to liability for other crimes (accessory, larceny), but not burglary. (*People* v. *Brady, supra,* 190 Cal.App.3d at pp. 132-134; see also *People* v. *Markus* (1978) 82 Cal.App.3d 477 [147 Cal.Rptr. 151].) This is so because the burglary statute separates the crime intended (theft, rape, assault, etc.) from the crime committed (burglary). Once inside, the perpetrator could abandon his intended crime and still be guilty of burglary. And a separate crime inside, while often supplemental proof of felonious intent, is not part of the burglary.

The Attorney General contends that entry makes the burglary complete only in terms of the burglar's liability; however, the crime continues as long as the burglar is on the premises. In support, the Attorney General refers us by analogy to the felony-murder rule and certain enhancement statutes.

Under the felony-murder statute, liability for murder arises when the killing is "committed in the perpetration" of the felony (§ 189); the prosecution need only show the felony and the killing are parts of a "continuous transaction." The killing may therefore be within the felony-murder statute even though it takes place *after* the actual commission of a burglary and during an attempted escape. (1 Witkin, Cal. Crimes (1963) § 312, p. 285.) Thus, the felony-murder statute has broader application than the burglary statute.

In addition, the policy behind enhancements is to provide greater punishment to a defendant who, "in the commission" of a burglary, uses a gun or inflicts great bodily injury. (§§ 12022.5, 12022.7.) But this does not alter the meaning of section 31, which treats aiders the same as principals. For example, a well-recognized defense to burglary is that the felonious intent was not formed until after the burglary, e.g., a shoplifter whose decision to steal is made inside the store. This defense is available to anyone charged with burglary. How can we deny the same defense to the miscreant's helper? We cannot, because California treats aiders and abettors the same as principals. Thus, if the actual perpetrator of the burglary can defend on a lack of felonious intent at the time of entry, so too can the aider.

The Attorney General argues *Brady* is inapplicable because the contested element was Brady's lack of knowledge a burglary took place; in contrast, Forte knew beforehand Paul planned to enter the residence. Such a distinction would eviscerate the holding in *People* v. *Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318], which requires proof of knowledge of the unlawful purpose of the perpetrator *and* the intent to facilitate the commission of the offense. (*Id.,* at p. 561.) " '[W]here there is room for doubt that a person intended to aid a perpetrator—his knowledge of the perpetrator's purpose will not suffice.' " (*Id.,* at p. 558.)

▇ Thus, Forte properly sought an instruction defining when the intent to aid and abet a burglary must be formed. " 'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' [Citation.]" (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913].) But a sua sponte duty to instruct will not arise in the absence of evidentiary support. (*People* v. *Kimble* (1988) 44 Cal.3d 480, 503 [244 Cal.Rptr. 148, 749 P.2d 803].)

Here, substantial evidence supported the requested instruction. Forte testified he knew of the burglary before entry but had no intent to participate. After entry was made, he walked to the front door of the victim's residence to talk with Paul, who was inside. Forte testified he did not know why he did this. This response does not inspire confidence in Forte's denial of participation; thus, the jury could conclude he decided to aid Paul *after* entry.

The Attorney General argues Forte's requested instruction was properly refused because it was an incorrect statement of the law. Furthermore, there was no duty to correct it because Forte did not make clear the nature of the defense to the trial court.

▇ ▇ ▇ ▇ True, Forte's instruction did not precisely set forth the correct legal theory.[3] ▇ Nevertheless, this proposed instruction was sufficient to alert the trial court to the theory of the defense, requiring the trial court, sua sponte, to give a correctly phrased instruction. (*People* v. *Stewart* (1976) 16 Cal.3d 133, 140 [127 Cal.Rptr. 117, 544 P.2d 1317].)

Finally, the Attorney General argues the proposed instruction was covered by CALJIC No. 3.01. But 3.01 does not clearly state the aider and abettor must intend to facilitate the commission of the burglary before or at entry. Thus the jury could have convicted Forte of burglary even though they believed he formed the intent *after* Paul's entry because the instruction fails to distinguish the importance of when Forte formed the intent to aid and abet.

▇ In determining whether the error is harmless, we need not decide whether Forte's requested instruction merely clarified the scope of the

---

[3] An aider and abettor need not share the intent to steal, but merely intend "to facilitate the commission of the offense whether or not he shares in its fruits." (*People* v. *Brady, supra,* 190 Cal.App.3d at p. 136.)

elements of the offense (*People* v. *Kimble, supra,* 44 Cal.3d at p. 501) or actually provided a missing element. The failure to give the requested instruction was error in any event. Here, there was sufficient evidence for the jury to conclude Forte had the requisite intent before entry; it is equally plausible the jury concluded Forte decided to aid and abet after the burglary was over. ■ ■■ ■ ■ Because it is impossible to determine upon which theory the jury relied in reaching its verdict (*People* v. *Green* (1980) 27 Cal.3d 1, 69-70 [164 Cal.Rptr. 1, 609 P.2d 468]), we cannot conclude the error was harmless, and accordingly reverse.[4]

Judgment reversed.

Scoville, P. J., and Wallin, J., concurred.

---

[4] In the event of a retrial, we briefly address Forte's other contentions.

The prosecution was permitted to introduce evidence that Forte admitted using heroin. In addition, Detective Warnack testified Forte had two-week-old injection marks on his arms during the July 15 interview. Such evidence, admitted on a theory of motive for the burglary, is clearly inadmissible. (*People* v. *Cardenas* (1982) 31 Cal.3d 897 [184 Cal.Rptr. 165, 647 P.2d 569].)

Forte's request for a lesser-related offense instruction of trespass should also have been given. (*People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055].)