[No. D013971. Fourth Dist., Div. One. June 30, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK ANGELO SMITH, Defendant and Appellant.

## COUNSEL

Judith L. Fanshaw, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, William

M. Wood and Barry J. T. Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

TODD, J.—A jury found Mark Angelo Smith guilty of residential burglary. (Pen. Code,[1] §§ 459, 460.) Smith waived jury trial on seven alleged serious prior felony conviction enhancements, each for residential burglary. (§§ 667, subd. (a), 1192.7, subd. (c)(18).) The trial court found all of them true. The court specifically found that each serious prior felony conviction was "separately brought and tried." Smith appeals after the court sentenced him to prison for 41 years, consisting of a 6-year upper term for the new residential burglary conviction and 35 years for the 7 enhancements.

Smith appeals, contending the trial court erred in failing to include in its otherwise proper aiding and abetting instructions an instruction specifying the time when the requisite specific intent must have been formed—before or at the time of the entry. Smith also contends that three of the enhancements were not tried separately and thus were improperly imposed.

### FACTS

About 10:30 a.m. on July 27, 1990, Darko Radovanovic was home in bed with a foot injury at the San Diego home of his parents. Darko heard his bedroom door open and shut, then heard footsteps running down the home's marble hallway. Within five to ten seconds Darko saw someone run by his bedroom window in the backyard. There was no way out of the backyard in the direction the person was running. Darko saw him run the opposite direction past the bedroom window and noticed he was wearing something blue. Darko went to the front of the house by the garage door and saw the man he identified as Smith running toward the street between the garage and a neighbor's house. Darko chased Smith down the street, noticing that he was looking back at Darko from a distance of 10 to 15 feet. When Darko "got a really good visual look at him," he stopped the chase, returned home and called 911, giving a detailed description of the person.

A nearby patrolman, Officer Thomas O'Connell, monitored the radio call and soon saw Smith who attempted to flee when the officer began to approach. Officer O'Connell gave chase. With the help of a police helicopter and another officer, Sharon Smyth, O'Connell arrested Smith who was underneath a large dumpster at a construction site. Smyth patted Smith down

---

[1]All statutory references are to the Penal Code unless otherwise specified.

and found a screwdriver tucked into his right sock. Upon further search a watch and jewelry from the Radovanovic house were found in Smith's pants pockets. Smith gave Smyth a false name, Social Security number and date of birth. Darko was brought to the scene of the arrest, and he identified Smith as the person he had seen running from the backyard and chased. Darko never saw Smith while he was in the house. The police were unable to find any usable fingerprints on or in the house.

## DISCUSSION

### I

Smith contends the court erred in instructing the jury on aiding and abetting by failing to include an instruction on the issue of intent. The instruction in question, CALJIC No. 14.54, states:

"In order for an accused to be guilty of burglary as an aider and abetter, he . . . must have formed the intent to encourage or facilitate the perpetrator prior to or at the time [that person] made the entry into the _____ with the required specific intent."

Smith relies on three cases holding the jury must be instructed not only with the standard aiding and abetting instruction language of CALJIC Nos. 3.00 and 3.01, as here,[2] but also with specific language indicating that the aider and abetter's intent must be formed at or before the time of the entry. (*People* v. *Macedo* (1989) 213 Cal.App.3d 554, 560 [261 Cal.Rptr. 754]; *People* v. *Forte* (1988) 204 Cal.App.3d 1317, 1323 [251 Cal.Rptr. 855]; *People* v. *Brady* (1987) 190 Cal.App.3d 124, 135 [235 Cal.Rptr. 248].) The Attorney General responds that Smith failed to ask the trial court for this type of instruction; the instructions were complete as given; and under the facts of the case any instructions on aiding and abetting were superfluous, and if there was a defect in them, it made no difference in the trial.

Since the decisions in the cases Smith cites the Supreme Court has clearly pronounced, in the context of the aiding and abetting instruction under

---

[2]CALJIC No. 3.00 as given here defined principals in crime as including "[t]hose who aid and abet the commission of the crime."

CALJIC No. 3.01 as given here provides in part: "A person aids and abets the commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purposes of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime."

The court's instructions on burglary correctly informed the jury that the requisite intent to steal "at the time of the entry" had to be established.

CALJIC No. 3.00, that error cannot be predicated on the trial court's failure to give an amplification or explanation on its own motion. (*People* v. *Cox* (1991) 53 Cal.3d 618, 669[3] [280 Cal.Rptr. 692, 809 P.2d 351].) Thus, there may be merit in the Attorney General's first point that in light of the other correct instructions given, the absent instruction in question is a matter of clarification and a request is required for such an instruction before a reviewing court may conclude it is error not to give the instruction sua sponte. ■ However, we ground our decision on the third basis suggested by the Attorney General.

As Smith recognizes, "a sua sponte duty to instruct will not arise in the absence of evidentiary support." (*People* v. *Forte, supra*, 204 Cal.App.3d at p. 1323.) In each of the cases on which Smith relies there was evidentiary support for the proposition the defendant was involved merely as an aider and abetter. (See *People* v. *Macedo, supra*, 213 Cal.App.3d 554, 557, 560—defendant outside in van as codefendant entered the garage of a home, then came out riding a stolen bicycle down the street with defendant following in the van; *People* v. *Forte, supra*, 204 Cal.App.3d at p. 1320—defendant testified that just before a neighbor yelled for the police another person entered the house and defendant went to the front of the house when the person called to him to help carry out stolen property; *People* v. *Brady, supra*, 190 Cal.App.3d at pp. 129-130—a witness testified he, not defendant, entered the apartment, and he told defendant he was going in to retrieve some of his possessions.)

In this case there is no evidentiary support for the giving of any of the instructions on aiding and abetting. There is no evidence of involvement by a second person. Nor is there room in these facts for a reasonable inference a second person was involved. Such an inference cannot be drawn due to the rapid succession of the events following discovery of the intruder in the house, including Darko's seeing Smith in the backyard within five to ten seconds, the essentially continuous chase to the point of arrest and Smith's possession of the property stolen from the house at the time of arrest. The facts that Darko did not see Smith while he was in the house and that there were no usable fingerprints found in the house do not raise a reasonable inference another person entered the house. At most, the latter conclusion is speculation and conjecture.

Under this state of the evidence, there was no basis for instructing on aiding and abetting, including the matter of aiding and abetting in burglary

---

[3]*Cox* was concerned with asserted error in the failure to include in CALJIC No. 3.00 a modification requiring the jury to determine whether the crime charged actually was a "natural and probable consequence" of the act so encouraged, in accordance with a holding in *People* v. *Hammond* (1986) 181 Cal.App.3d 463, 469 [226 Cal.Rptr. 475]. (*Cox, supra*, 53 Cal.3d at p. 668; see CALJIC No. 3.02 (1991 rev.).)

under CALJIC No. 14.54. Since there was no need to give these instructions, it was not error to omit the CALJIC No. 14.54 instruction on the timing of the requisite intent.

## II

■ Smith contends the court improperly imposed three serious felony prior conviction enhancements under sections 667, subdivision (a), and 1192.7, subdivision (c)(18), for prior convictions that were not tried separately. Section 667, subdivision (a), is part of the 1982 initiative under Proposition 8 known as the Victims' Bill of Rights. Its purpose is to deter recidivism. (*People* v. *Jackson* (1985) 37 Cal.3d 826, 833 [210 Cal.Rptr. 623, 694 P.2d 736].) Section 667 provides that for defined serious felony prior convictions within which category Smith's seven prior residential burglary convictions lie (§ 1192.7, subd. (c)(18)), the person having any such serious felony prior convictions "shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement *for each such prior conviction on charges brought and tried separately*." (Italics added.) Smith's contention focuses on three pairs of such serious prior felony convictions which were brought separately under separate case numbers pertaining to separate crimes, but which he asserts were not "tried separately." The factual basis for his assertion is that, although none of the cases was consolidated, there was a common date for certain criminal proceedings in connection with the charges, including the date of his entry of guilty pleas and the date of sentencing.[4]

Smith cites the rule of *In re Harris* (1989) 49 Cal.3d 131, 136 [775 P.2d 1057], that "the requirement in section 667 that the predicate charges must

[4]The trial court took judicial notice of the superior court files in the prior cases. The Attorney General's assertion that this matter is not in the record is without merit. The superior court files show:

The first pair of cases was processed under case numbers CR 49992 and CR 50667 between February and September 1980. Each of these cases involved a single charge of burglary, one committed in February and the other in May 1980. Smith entered guilty pleas in both cases in superior court on the same date after the same trial date had been set for both, and they were trailed for trial. Smith was granted three years' probation in both cases at a probation and sentence hearing on the same date. On the same date in January 1982, probation was revoked in both cases.

The second pair of cases was processed under case numbers CR 56651 and CR 56652 between December 1981 and January 1982. CR 56651 involved a single charge of residential burglary committed in September 1981. CR 56652 involved charges of two counts of residential burglary and two counts of grand theft committed in October 1981. Smith entered guilty pleas to the three burglary charges in both cases in municipal court on the same date after he and the prosecutor had used a single plea bargain form to memorialize the terms of the bargain in each case. Smith was sentenced to prison in both cases on the same date in January 1982. In CR 56652 he received a principal two-year term and a consecutive eight-month term. In CR 56651 he received a consecutive eight-month term. Three-year

have been 'brought and tried separately' demands that the underlying *proceedings* must have been *formally distinct, from filing to adjudication of guilt.*" (Italics added.) He also cites the statement in *People* v. *Ebner* (1966) 64 Cal.2d 297, 304 [49 Cal.Rptr. 690, 411 P.2d 578], that the phrase in question "signifies that the two prior felony proceedings must be totally separate, not only during proceedings before trial but also as to those leading to the ultimate adjudication of guilt." The holding in *Ebner* was that there is no distinction between an adjudication of guilt based on a plea of guilt and one predicated on a trial on the merits. (*Ibid.*) There was no question in *Ebner* about the separateness of the proceedings. The only contention there was that since defendant had pled guilty to the prior offense, he was not in fact "tried" as called for in the statute. The *Ebner* dictum, however, was quoted without comment in *In re Harris, supra,* 49 Cal.3d at page 135.

*In re Harris, supra,* 49 Cal.3d 131, 136, held that charges initially made in a single felony complaint, but later prosecuted under two separate informations, were not "brought . . . separately." *Harris* sets forth the rationale that "brought" in the context of bringing criminal charges "plainly means to initiate proceedings. (Cf. *People* v. *Ebner, supra,* 64 Cal.2d at p. 304 [construing former § 644].) This reading is altogether consistent with the general rule that it is the complaint that initiates felony proceedings. (See Cal. Const., art. I, § 14; Pen. Code, §§ 738, 859.)" (*Harris, supra,* 49 Cal.3d at p. 137.) Thus, the sole concern of *In re Harris* was the aspect of the meaning of "charges brought . . . separately." The case did not decide what was meant by "tried separately," although it did state the rule that the underlying proceedings must have been "formally distinct." (*Id.* at p. 136.)

In *People* v. *Thomas* (1990) 219 Cal.App.3d 134, 145-147 [267 Cal.Rptr. 908], this court held the proceedings were "formally distinct" and thus "brought and tried separately" where the defendant in two separately filed cases that were not consolidated pled guilty on the same date and was sentenced later on the same date. Trial by jury had commenced in one of the

sentences in CR 49992 and CR 50667 upon revocation of probation were ordered to run concurrent with the time ordered in CR 56651 and CR 56652.

The third pair of cases was processed under case numbers CR 65452 and CR 65790 between November 1983 and April 1984. Each of these cases involved a separate charge of residential burglary, one committed in September 1983 and the other in October 1983. Smith entered guilty pleas in both cases in superior court on the same date. In CR 65452 Smith pled guilty to attempted residential burglary. In CR 65790 Smith pled guilty to residential burglary and admitted one serious felony prior that was alleged. Each plea was contingent on entry of a plea in the other case. The pleas were entered after a readiness conference for both cases had been set for the same date and the trial date set for CR 65452 had been vacated. Smith was sentenced in both cases on the same date. In CR 65790 Smith was sentenced to a six-year upper term with a five-year enhancement for the serious felony prior conviction. In CR 65452 Smith was sentenced to a concurrent two-year term.

cases before the matter was continued and defendant pled guilty to both counts. In *Thomas* we said, in part:

"The same date for accepting the pleas in these nonconsolidated cases is of no significance for purposes of section 667. (See *People* v. *Lewis* (1987) 191 Cal.App.3d 1288, 1301 [citation], '[t]he "separately brought and tried" limitation of section 667, subdivision (a) does not bar multiple enhancements where convictions are based on unrelated counts of different accusatory pleadings.')" (*Id.* at p. 147.)

Thus, *Thomas* placed significance on the facts the prior felony proceedings were processed under separately numbered criminal cases and they were not consolidated. It expressly found that the same timing of the processing of the case for purposes of the entry of the guilty plea was not significant, and it impliedly made the same finding concerning the same timing of the sentencing. Readily apparent considerations of efficiency in judicial administration support these similarities of timing in various proceedings in the cases and furnish a sound basis for concluding that the timing similarities do not cause the proceedings to be other than "formally distinct." (See *People* v. *Gonzales* (1990) 220 Cal.App.3d 134, 140-141 [269 Cal.Rptr. 221].)

*People* v. *Gonzales, supra,* 220 Cal.App.3d 134, 140-144, placed emphasis on the fact the cases were not consolidated, either actually or de facto, when it considered the totality of the circumstances surrounding the progress of the defendant's cases and concluded the charges were tried separately. (*Id.* at p. 140.) *Gonzales* involved separately numbered residential burglary charges where the first complaint was filed almost a month before the second burglary occurred. The parties arrived at a plea bargain that was accepted on the same date in the municipal court which "separately stated the accusations brought by each complaint, and specified each case separately in asking appellant for his plea. Furthermore, the court consistently referred to 'these offenses' during the proceeding." (*Id.* at p. 139.) *Gonzales* gives further details of the processing of the prior cases, including frequent verbal and paperwork references to them separately. (*Ibid.*) Discussing *In re Harris, supra,* 49 Cal.3d 131, *People* v. *Jerez* (1989) 208 Cal.App.3d 132 [256 Cal.Rptr. 31], and *People* v. *Lewis* (1987) 191 Cal.App.3d 1288 [237 Cal.Rptr. 64], regarding the concept of de facto consolidation for purposes of applying section 667, *Gonzales* states (at p. 143):

"We reject the notion that calendaring and hearing more than one case per defendant per day results in 'de facto' consolidation. Courts do not determine issues not presented by unrecorded nonrulings.

"*Harris* teaches that the proceedings giving rise to separate priors must be 'formally distinct.' *Jerez* explains that cases that 'could have been' consolidated, but which were not, are separate for section 667 purposes. *Lewis* explains that '[t]he "separately brought and tried" limitation of section 667, subdivision (a) does not bar multiple enhancements where convictions are based upon unrelated counts of different accusatory pleadings. [Citations.]' (191 Cal.App.3d at p. 1301.)"

Here, as in *Gonzales*, the record shows the verbal and paper-work references to the cases were separate with files for each case and transcripts showing each case was dealt with by its separate number. As in *Lewis, supra*, the convictions are based on unrelated counts of different accusatory pleadings. As in *Thomas, supra*, and *Jerez, supra*, the cases were not consolidated. In addition, under *Thomas, supra*, it is not significant for purposes of section 667, subdivision (a), that the guilty pleas were taken on the same date. Nor do we find any particular significance for purposes of applying the section in the other transactions that occurred on the same date. Obvious considerations of judicial efficiency called for that type of processing the multiple cases of a single defendant.

In this connection, Smith relies on a statement in footnote 6 of *People* v. *Deay* (1987) 194 Cal.App.3d 280, 290 [239 Cal.Rptr. 406]:

"We note further that, as to both priors, defendant here pled guilty, i.e., was 'tried,' under one case number. This, however, is not dispositive of our conclusion that defendant was not tried separately for his prior convictions. Although we agree that separate case numbers may be evidence that multiple priors were brought separately, we reject any suggestion that, despite the fact the defendant pled guilty to both priors at the same time they may be deemed to have been tried separately simply because of the fortuity of their bearing different case numbers. In our view, and consistent with its purpose, *section 667 contemplates temporal rather than administrative separateness*. The random assignment of case numbers is not only inconclusive of a defendant's having been tried separately within the meaning of section 667; to measure separateness in this manner also opens a door to prosecutorial abuse of the process." (Italics added.)

Since *Deay* involved two *counts* of a *single* felony complaint to which defendant entered a guilty plea in one proceeding on the same date, it is factually dissimilar to Smith's case where separate accusatory pleadings were adjudicated. (See *People* v. *Thomas, supra*, 219 Cal.App.3d 134, 147.) Contrary to the above underscored statement in *Deay*, in light of the "formally distinct" test set forth by the Supreme Court in the more recent *In re*

*Harris* case, we are of the view that separately filed cases involving separate crimes can be adjudicated on the same date under their separate case numbers and still be considered to have been both "brought and tried separately" within the meaning of section 667. This construction of the statute and *In re Harris*, rather than *Deay*'s construction, advances the purpose of the statute to deter recidivism. (See *People* v. *Jackson*, *supra*, 37 Cal.3d 826, 833, "The basic purpose of the section—the deterrence of recidivism—would be frustrated by a construction which did not take account of prior criminal conduct.")

We conclude in each of the three pairs of serious prior felony conviction cases Smith challenges that the proceedings were "formally distinct" within the meaning of *In re Harris*, *supra*. The five-year enhancement for each was properly imposed.

### DISPOSITION

Judgment affirmed.

Wiener, Acting P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 24, 1992. Kennard, J., was of the opinion that the petition should be granted.