[No. B087693. Second Dist., Div. Seven. Dec. 13, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER RENAULT KINSEY, Defendant and Appellant.

## COUNSEL

Wesley A. Van Winkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Jaime L. Fuster and Allison Hughes Ting, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—A jury convicted appellant of attempted injury upon a cohabitant (Pen. Code[1] §§ 664/273.5, subd. (a)), battery (§ 242), and assault (§ 240) and acquitted him of injury upon a cohabitant (§ 273.5, subd. (a)). In a bifurcated proceeding, the trial court found true three serious felony allegations (§ 667, subds. (b)-(i)): a 1986 attempted robbery conviction (§§ 664/211), a 1987 robbery conviction (§ 211), and a 1989 attempted robbery conviction (§§ 664/211). At the probation and sentence hearing, appellant was found in violation of probation on his earlier conviction of inflicting injury upon a cohabitant (§ 273.5, subd. (a)). Appellant was sentenced to a 29-year-to-life state prison term and ordered to pay a $10,000 restitution fine (Gov. Code, § 13967, subd. (a)).

Appellant contends: (1) *attempted* injury upon a cohabitant (§§ 664/273.5, subd. (a)) is not a crime; (2) there was insufficient evidence of intent to cause a traumatic condition; (3) the jury was improperly instructed; (4) "three strikes" was not a valid urgency measure; (5) three strikes is unconstitutionally vague; (6) as applied, three strikes is cruel and unusual punishment; (7) only convictions after March 7, 1994, are "strikes"; and (8) the trial court erred in imposing a $10,000 restitution fine.

[1]Statutory references, unless otherwise noted, are to the Penal Code.

## Factual Background

The trial concerned events of May 17, 1994, in apartment 1 at 45045 Beech Street, Lancaster, where victim Patricia Smith, eight and a half months pregnant, lived with her three children and appellant, the father of one of her children, two-year-old Christopher. Five people were involved: *the victim, appellant, Amber Bardin*, a friend and neighbor of the victim's who was also pregnant, in her third month, *Michael Crawford*, Amber Bardin's boyfriend, and *Ed Rimpel*, the boyfriend of Amber Bardin's roommate. Only three testified: the victim, Amber Bardin, and Michael Crawford. Also testifying was Deputy Sheriff Brian Dunn. He responded to the scene, interviewed the victim, Ms. Bardin, and Mr. Crawford and arrested appellant. Appellant did not testify nor present any defense evidence.

We summarize the evidence. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

On Tuesday afternoon, May 17, 1994, appellant and Michael Crawford were drinking beer. Amber Bardin was visiting her friend Patricia Smith, sitting on the couch, when appellant entered. He was smoking[2] and Ms. Smith handed him an ashtray. He did not use it and dumped ashes on the floor. She told him "if he was mad about something [she] didn't want to hear it; [she] didn't want to be bothered."

Appellant became angry and Amber Bardin saw him push Ms. Smith in her breast area or her shoulders. Ms. Smith tried to walk away, to ignore it but appellant "kept on wrestling with her, messing with her," physically getting right up in her face.

The commotion attracted Michael Crawford. Appellant was standing by Ms. Smith and both of them "were yelling and screaming, and Amber was yelling, too." Mr. Crawford yelled at appellant and got between him and Ms. Smith. Appellant told Mr. Crawford to get out of the way. Mr. Crawford tried to push appellant away from Ms. Smith but appellant pushed him back and kept "yelling and screaming" at Ms. Smith.

The physical struggle between Mr. Crawford, trying to keep appellant away from Ms. Smith, and appellant, trying to get at Ms. Smith, took them all over the apartment and lasted about an hour. During the struggle, when Mr. Crawford could not control appellant, Mr. Crawford tackled him.

---

[2] A fact we infer from Patricia Smith's testimony that she handed appellant an ashtray, he did not use it, and dropped ashes on the floor.

Near the end, Amber Bardin "was scared of what could happen to [Ms. Smith]" and went next door and got a big stick.

Ed Rimpel, who also lived next door to Ms. Smith and was six feet tall and weighed about two hundred thirty-five pounds, came to Ms. Smith's apartment "to make sure" she did not get hurt. Mr. Rimpel got appellant out of Ms. Smith's apartment. Still, appellant was "trying to get at [Ms. Smith]."

Mr. Crawford and Mr. Rimpel tried to persuade appellant to go outside the gate and Amber Bardin went across the street and called the police.

Deputy Sheriff Brian Dunn responded to the scene and saw appellant walking toward Amber Bardin. When appellant saw Deputy Dunn he turned, walked away, and ignored Deputy Dunn's direction that he walk to the patrol car. Deputy Dunn finally intercepted appellant and had him sit in the patrol car while he interviewed witnesses.

He interviewed Ms. Smith and asked her how she had gotten the fresh, bloody, two-and-a-half-inch scratch on her neck.[3] She told him appellant had been drinking, got upset, started yelling, screaming, and cursing at her, shoved her hard backwards and then tried to get at her while Michael Crawford and Amber Bardin stopped him. Appellant tried "reaching through them at her . . . swiping or swinging at her with his hand as he's reaching out at her face." [S]he said it [sic] ultimately ended up catching her across the face with his fingers and scratched her face . . . ."

Amber Bardin told Deputy Dunn "she was very afraid [appellant] was going to hurt [Ms. Smith]."

### DISCUSSION

1. *Appellant contends* attempted *injury upon a cohabitant (§§ 664/273.5, subd. (a)) is not a crime.*

In pertinent part, section 273.5 provides: ". . . any person who willfully inflicts upon any person with whom he . . . is cohabiting, or . . . who is the mother . . . of his . . . child, corporal injury resulting in a traumatic condition, is guilty of a felony . . . ."

"Traumatic condition" is defined as "a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by a physical force." (§ 273.5, subd. (c).)

---

[3]Deputy Dunn mistakenly testified the scratch or scratches were on Ms. Smith's cheek. The jury was shown the scar on Ms. Smith's neck.

Section 664 states "Every person who attempts to commit *any crime*, but . . . is prevented or intercepted in the perpetration thereof, is punishable . . . for . . . such attempt[ ] . . . ." (Italics added.)

"An attempt to commit a crime consists of two elements: a specific intent to commit the crime,[4] and a direct but ineffectual act done toward its commission." (§ 21a.)

██ Appellant acknowledges one can commit the crime of attempted violation of section 273.5 without inflicting "corporal injury." But appellant argues (without precisely saying so) *both* the consummated crime (§ 273.5, subd. (a)) and its attempt (§§ 664/273.5, subd. (a)) require a resulting "traumatic condition." Appellant neither explains why "traumatic condition" is or should be an element of an attempt nor does he cite any authority for such a proposition. We reject the contention.

A similar argument was made and rejected in *People* v. *Dillon* (1983) 34 Cal.3d 441, 452-455 [194 Cal.Rptr. 390, 668 P.2d 697]. Dillon, charged with felony murder, argued there should be "proof not only of intent and a direct act beyond mere preparation, but of the commission of an element of the underlying [robbery] . . . ." (*Id.*, at p. 453.) Our Supreme Court was "not persuaded to so limit the law of attempts." (*Ibid.*) The court stated: "As long as the trier of fact is convinced beyond a reasonable doubt that the defendant intended to commit a crime and was in the process of attempting to carry out that intent, no public purpose is served by drawing fine distinctions between those who have managed to satisfy some element of the offense and those who have not." (*Ibid.*)

Consonant with *People* v. *Dillon*, attempted murder does not require a death (*People* v. *Singleton* (1980) 112 Cal.App.3d 418 [169 Cal.Rptr. 333]), attempted subornation of perjury does not require perjury (*People* v. *Meaders* (1983) 148 Cal.App.3d 1155 [197 Cal.Rptr. 1]), attempted detention and concealment of children does not require detention or concealment (*People* v. *Milne* (1882) 60 Cal. 71), and attempted drunk driving does not require driving (*People* v. *Garcia* (1989) 214 Cal.App.3d Supp. 1 [262 Cal.Rptr. 915]).

We hold attempted injury upon a cohabitant (§§ 664/273.5, subd. (a)) does not require a "traumatic condition."

---

[4]Although, because of this specific intent element, some attempts would not be lesser included offenses of their consummated offenses (See *People* v. *Rush* (1993) 16 Cal.App.4th 20, 27-38 [20 Cal.Rptr.2d 15] (dis. opn. of Woods (Fred), J.)), section 1159 provides "The jury . . . may find the defendant guilty of . . . [the] offense . . . or of an attempt to commit the offense."

2. *Appellant contends there was insufficient evidence of intent to cause a traumatic condition.*

█ Appellant's contention is a narrow one. He "concedes that the evidence was sufficient for the jury to have concluded that appellant intended to strike or at least touch Patricia Smith." But, he argues, the evidence was insufficient for the jury to conclude he intended to cause a "traumatic condition." The contention does not bear scrutiny.

"[T]he Legislature has clothed persons of the opposite sex in intimate relationships with greater protection by requiring less harm to be inflicted before the offense is committed." (*People* v. *Guiterrez* (1985) 171 Cal.App.3d 944, 952 [217 Cal.Rptr. 616].) A "traumatic condition" is "a wound or *external or internal injury*, whether *of a minor* or serious *nature*, caused by a physical force." (§ 273.5, subd. (c), italics added.)

Patricia Smith, eight and a half months pregnant, was especially vulnerable to such "external or internal injury." A jury could have reasonably concluded that someone who shoved Ms. Smith hard; "yelled, screamed, and cursed at her; tried for an hour to "get at her"; and kept reaching toward her, "swiping or swinging at her with his hand" intended to cause her "external or internal injury."[5]

3. *Appellant contends the jury was improperly instructed.*

The trial court instructed the jury that to be guilty of a violation of section 273.5 a person must "willfully inflict [ ] upon his [cohabitant] . . . bodily injury resulting in a traumatic condition." (CALJIC No. 9.35 (1989 re-rev.).)

Concerning "the crime of attempted Penal Code section 273.5a," the trial court instructed the jury "there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator. Unless such specific intent exists the crime to which it relates is not committed. [¶] The crime of attempted Penal Code section 273.5a requires *the specific intent to inflict bodily injury resulting in a traumatic condition upon the person* as described in Penal Code section 273.5a." (CALJIC No. 3.31 (1992 rev.).)

█ Appellant contends these instructions failed to inform the jury attempted violation of section 273.5, subdivision (a) requires proof of an *intent to cause a traumatic condition.* We disagree.

---

[5]We need not consider whether the two-and-a-half-inch scratch on Ms. Smith's neck constitutes substantial evidence of an intent to cause a traumatic condition.

Fairly considered, a reasonable juror would have understood the trial court's instructions to mean an intent to cause traumatic condition was a necessary element of attempted violation of section 273.5, subdivision (a). If appellant desired a clarification of the fine distinction between an intent to inflict bodily injury and an intent to cause a traumatic condition (which is an "external or internal injury . . . of a minor . . . nature") it was his duty to request such a clarification. (*People* v. *Cox* (1991) 53 Cal.3d 618, 669 [280 Cal.Rptr. 692, 809 P.2d 351]. See also *People* v. *Smith* (1992) 7 Cal.App.4th 1184, 1188 [9 Cal.Rptr.2d 491].)

The prosecutor made no such distinction. In her argument she made clear that attempt required a specific intent "to inflict a traumatic condition upon [Patricia Smith]."

The contention is without merit.

4. *Appellant contends three strikes was not a valid urgency measure.*

■ Our California Constitution provides that "an urgency statute may not . . . change the . . . duties of any office . . . ." (Cal. Const., art. IV, § 8, subd. (d).)

Appellant contends section 667, subdivisions (b)-(i), an urgency measure, violated this constitutional provision by changing the duties of prosecutors and judges. We disagree.

Urgency legislation is "a process that is part and parcel of this state's constitutionally sanctioned legislative process." (*People* v. *Robertson* (1982) 33 Cal.3d 21, 46 [188 Cal.Rptr. 77, 655 P.2d 279].) "The Legislature has authority to determine when urgency measures are necessary . . . [and] recitals of necessity and public interest in legislation must be given great weight and every presumption made in favor of their constitutionality." (*Azevedo* v. *Jordan* (1965) 237 Cal.App.2d 521, 525-526 [47 Cal.Rptr. 125].) "An addition or subtraction . . . of the duties . . . which does not substantially affect the primary duties of [an] office, is not such a change of duties as would prevent immediate effectiveness of legislation properly declared to be urgent." (*Martin* v. *Riley* (1942) 20 Cal.2d 28, 37 [123 P.2d 488].)

We find nothing in section 667, subdivisions (b)-(i) which substanally affects the primary duties of either prosecutors or judges. We agree with *People* v. *Cartwright* (1995) 39 Cal.App.4th 1123, 1133-1134 [46 Cal.Rptr.2d 351], which rejected an identical claim.

5. *Appellant contends three strikes is unconstitutionally vague.*

■ Appellant contends the three strikes legislation "is vague and fails to give adequate notice of the punishment to be imposed." To support his

argument, as did the defendant in *People* v. *Sipe* (1995) 36 Cal.App.4th 468 [42 Cal.Rptr.2d 266], appellant recites "a catalog of issues to which he claims the statute provides no clear answer. This shotgun approach is the sort of constitutional challenge rejected in *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188 [246 Cal.Rptr. 629, 753 P.2d 585]." (*People* v. *Sipe, supra,* 36 Cal.App.4th at p. 480.)

As applied to appellant, the punishment to be imposed is not vague. "If a defendant has two or more prior felony convictions . . . the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of . . . (ii) Imprisonment in the state prison for 25 years." (§ 667, subd. (e)(2)(A).)

6. *Appellant contends, as applied, three strikes is cruel and unusual punishment.*

■ Our Supreme Court has emphasized "the considerable burden a defendant must overcome in challenging a penalty as cruel or unusual. The doctrine of separation of powers is firmly entrenched in the law of California, and a court should not lightly encroach on matters which are uniquely in the domain of the Legislature. Perhaps foremost among these are the definition of crime and the determination of punishment. While these intrinsically legislative functions are circumscribed by the constitutional limits of article I, section 17, the validity of enactments will not be questioned 'unless their unconstitutionality clearly, positively, and unmistakably appears.'" (*People* v. *Wingo* (1975) 14 Cal.3d 169, 174 [121 Cal.Rptr. 97, 534 P.2d 1001], fn. omitted.)

Appellant is not subject to a life sentence merely on the basis of his current offense but on the basis of his recidivist behavior. Recidivism in the commission of multiple felonies poses a manifest danger to society justifying the imposition of longer sentences for subsequent offenses. (See *People* v. *Karsai* (1982) 131 Cal.App.3d 224, 242 [182 Cal.Rptr. 406] [recidivist statute for violent sex offenders], overruled on other grounds in *People* v. *Jones* (1988) 46 Cal.3d 585, 600, fn. 8 [250 Cal.Rptr. 635, 758 P.2d 1165].) In discussing recidivist statutes, the Supreme Court of the United States has stated: "The purpose of a recidivist statute . . . [is] to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line

dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction." (*Rummel* v. *Estelle* (1980) 445 U.S. 263, 284-285 [63 L.Ed.2d 382, 397, 100 S.Ct. 1133].)

Appellant had been convicted of robbery and attempted robbery on three separate occasions. He had served three separate state prison terms, violated parole, been administratively punished for an assault by a prisoner and had been convicted of inflicting corporal injury on a cohabitant (§ 273.5, subd. (a)). This last conviction occurred in 1991 based upon appellant's beating Patricia Smith—then pregnant with his son Christopher—"in the head when two L.A.P.D. officers drove upon the scene."

Appellant has failed to show that this case and this defendant is that "exquisite rarity" (*People* v. *Weddle* (1991) 1 Cal.App.4th 1190, 1196 [2 Cal.Rptr.2d 714]), an instance of punishment which offends fundamental notions of human dignity or which shocks the conscience.

*7. Appellant contends only convictions after March 7, 1994, are "strikes."*

██ The contention is a familiar one. We join other courts in rejecting it. (*People* v. *Reed* (1995) 33 Cal.App.4th 1608, 1610-1612 [40 Cal.Rptr.2d 47]; *People* v. *Anderson* (1995) 35 Cal.App.4th 587, 600-601 [41 Cal.Rptr.2d 474]; *People* v. *Green* (1995) 36 Cal.App.4th 280 [42 Cal.Rptr.2d 249]; *People* v. *Sipe, supra,* 36 Cal.App.4th 468; *People* v. *Hill* (1995) 37 Cal.App.4th 220 [44 Cal.Rptr.2d 11].)

*8. Appellant contends the trial court erred in imposing a $10,000 restitution fine.*

Pursuant to Government Code section 13967, subdivision (a), the trial court imposed a $10,000 restitution fine. Appellant made no objection in the trial court.

Appellant now contends the trial court erred because it failed to determine he had the ability to pay the fine.

The contention is without merit. By failing to object in the trial court appellant waived any error and because he will have earnings, albeit minimal, while in state prison he will have ability to pay. (*People* v. *Frye* (1994) 21 Cal.App.4th 1483 [27 Cal.Rptr.2d 52]; *People* v. *Menius* (1994) 25 Cal.App.4th 1290, 1297-1299 [31 Cal.Rptr.2d 15]; *People* v. *Gibson* (1994)

27 Cal.App.4th 1466, 1468-1469 [33 Cal.Rptr.2d 217]; *People* v. *Gentry* (1994) 28 Cal.App.4th 1374, 1376-1378 [34 Cal.Rptr.2d 37]; *People* v. *Hennessey* (1995) 37 Cal.App.4th 1830 [44 Cal.Rptr.2d 792]; *People* v. *DeRouen* (1995) 38 Cal.App.4th 86 [44 Cal.Rptr.2d 842].)

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied January 8, 1996, and appellant's petition for review by the Supreme Court was denied March 14, 1996.